IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMUNITY ARTS ADVOCATES, INC., and STEPHEN H. BAIRD, ) ) ) Plaintiffs, ) ) v. ) ) CITY OF BOSTON, ) ) Defendant. ) ) | Civil Action No: 04 11618 NG Judge Nancy Gertner |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

Testa, Hurwitz & Thibeault, LLP

John J. Cotter (BBO# 554524)
Thomas A. Turano (BBO# 552168)
Jason A Duva (BBO# 640156)
Karen A. Schouten (BBO# 658141)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
High Street Tower
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

Attorneys for Plaintiff,
Community Arts Advocates, Inc.,
and Stephen H. Baird

**TABLE OF CONTENTS**

**PAGE**

I.   FACTS..................................................... 3
   A. Stephen H. Baird's Constitutional Rights Are Violated By
      The City's Policies And Enforcement Actions.............. 3

      1. June 19, 2004 Incident On Boston Common. .............. 4

      2. July 18, 2004 Incident On Boston Common ............... 5

      3. August 27, 2004 Incident On Dock Square ............... 5

   B. CAA's Members' Constitutional Rights Are Violated By The
      City's Policies And Enforcement Actions.................. 6

II.  **ARGUMENT**.............................................. 8
   A. Preliminary Injunction Is Necessary To Prevent Further
      Irreparable Harm From The City's Enforcement Of It's
      Unconstitutional Laws, Policies and Customs.............. 8

   B.   CAA And Mr. Baird Face Irreparable Harm In The Absence of
        Immediate Injunctive Relief............................. 9

   C. CAA And Mr. Baird Have A Substantial Likelihood Of Success
      On The Merits Of Their Claims Because The Ordinance And
      Rule Are Facially Unconstitutional...................... 10

      1. The Ordinance and Rule Are Not Narrowly Tailored To Serve
         A Significant Or Substantial Government Interest ...... 12

      2. The Ordinance and Rule Do Not Leave Open Ample
         Alternative Channels For The Type of Expressive Activity
         That Is Being Restricted ............................. 15

      3. The Ordinance and Rule Are Unconstitutional Restrictions
         On The Content Of Speech ............................. 17

   D. The Balance Of Hardships Favors CAA And Mr. Baird........ 19

   E. The Public Interest Supports The Grant Of A Preliminary
      Injunction.............................................. 19

**CONCLUSION**.............................................. 20

i

**TABLE OF AUTHORITIES**

**PAGES**

**Cases**

Benefit v. City of Cambridge
  679 N.E.2d 184 (Mass. 1997) .................................. 17

Bery v. City of New York
  97 F.3d 689 (2d Cir. 1996) ......................... 11, 15, 18

Burk v. Augusta-Richmond County,
  365 F.3d 1247 (11th Cir. 2004) ......................... 17, 18

Casey v. City of Newport
  308 F.3d 106 (1st Cir. 2002) ........................... passim

Clark v. Community For Creative Non-Violence
  468 U.S. 288 (1984) ........................................ 12

Davenport v. City of Alexandria, Va.
  748 F.2d 208 (4th Cir. 1984) .......................... 13, 18

Dombrowski v. Pfister
  380 U.S. 479 (1965) ......................................... 9

Elrod v. Burns
  427 U.S. 347 (1976) .................................. 9, 10, 18

Friedrich v. City of Chicago
  619 F.Supp. 1129 (N.D.Ill. 1985) .......................... 18

Friends of the Earth v. Laidlaw Environmental Services
  528 U.S. 167 (2000) ......................................... 7

Goldstein v. Town of Nantucket
  477 F.Supp. 606 (D.Mass. 1979) ........................ 17, 18

Hurley v. Irish-American Gay, Lesbian and Bisexual Group of
Boston, Inc.
  515 U.S. 557 (1995) ........................................ 11

Matrovincenzo v. City of New York
  313 F.Supp.2d 280 (S.D.N.Y. 2004) ......................... 16

New York State Bar Assn. v. Reno
  999 F.Supp. 710 (N.D.N.Y. 1998) .......................... 9, 10

Perry Educ. Ass'n v. Perry Local Educators' Ass'n
  460 U.S. 37 (1983) ........................................ 16

Ross-Simons of Warwick, Inc. v. Baccarat, Inc.
  102 F.3d 12 (1st Cir. 1996) ............................. 8, 18

Schaumburg v. Citizens for a Better Env't
  444 U.S. 620 (1980) ....................................... 17

Secretary of Maryland v. Joseph H. Munson Co.
  467 U.S. 947 (1984) ........................................ 7

Shuttlesworth v. Birmingham
  394 U.S. 147 (1969) ....................................... 14

Ward v. Rock Against Racism
  491 U.S. 781 ......................................... passim

**Statutes and Rules**

Boston Municipal Ordinance § 16-12.24.................... passim

Boston Police Rule 75................................... passim

Federal Rule of Civil Procedure 17(b)....................... 7

**Secondary Materials**

Paul Lewis, The Grand Incendiary, Dial Press, NY, 1973......... 6

Harvey A. Silverglate and Dan Poulson, Killjoy Was Here, The
  Boston Phoenix, September 3, 2004.......................... 19

William H. Whyte, City: Rediscovering the Center, Anchor Books,
  NY, 1988 ................................................. 19

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**</u>
<u>**MOTION FOR A PRELIMINARY INJUNCTION**</u>

For years, the City of Boston has been violating the constitutional rights of plaintiffs Stephen H. Baird and Community Arts Advocates, Inc. ("CAA") to exercise artistic freedom in the parks and public spaces of Boston, and again recently has violated their constitutional rights through unlawful enforcement actions.  These actions deprive Plaintiffs of their rights to play musical instruments, to perform, and to display and profit from their art, without any rational or compelling reason.

While the City's unconstitutional conduct began long ago, the City's recent enforcement actions and failure to rectify its policies necessitate preliminary relief.  First, the City's statutory scheme is unconstitutional on its face.  Boston Municipal Ordinance § 16-12.24 vests all authority to regulate noise-making and the licensing of itinerant musicians in the Police Commissioner, who has articulated her authority in Police Rule 75, which broadly restricts musicians' ability to perform.

Second, the City continues to delay Plaintiffs' efforts to resolve this dispute out of court.  Plaintiffs CAA and Mr. Baird most recently attempted to resolve the dispute about the Ordinance, Rule, and Police enforcement out of court through discussions with the City and Police Department beginning in

April, 2004.  Plaintiffs withheld filing a lawsuit in this dispute for several months based on the belief that the City and Police Department were committed to reaching a constitutional resolution.

Third, although the City's representatives have said that the City had rescinded Police Rule 75, the City has declined to provide any written confirmation of the rescission or other written confirmation of the current state of the law.  The City's representatives did propose a replacement Rule, but that replacement Rule reaches only the Boston Police Department and does not address the unconstitutional enforcement practices, policies, and customs of other law enforcement Officers in the City, including Park Rangers.  The replacement Rule also retains broad restrictions on artists' ability to perform, vests complete discretion in the Police Commissioner, and fails to address completely the rights of performers other than those who play musical instruments.

While the current state of the law in Boston is unknown in view of the supposed rescission of Police Rule 75, the City's conduct is clear.  On July 18, 2004, after the City's alleged and unsubstantiated corrective action, a Ranger of the Boston Parks and Recreation Department informed Mr. Baird that he could not perform on the Boston Common.  Plaintiffs filed their complaint on July 20, 2004, provided the City with a courtesy

copy the next day, and when the matter was not resolved, served the City on August 2, 2004.  Yet further violations continue. On August 27, 2004, Mr. Baird was approached again, this time by a Boston Municipal Police Officer, and told that he was not allowed to perform in Dock Square.

To prevent any additional unconstitutional conduct, Plaintiffs have an immediate need for a preliminary injunction against the City, its Police and Parks Departments, officers and agents to prevent additional deprivations of Plaintiffs' rights, while the Court considers the merits of CAA and Mr. Baird's claims that Boston Municipal Ordinance § 16-12.24, Boston Police Rule 75 and the City's enforcement practices, policies, and customs violate the First and Fourteenth Amendments to the United States Constitution and the Constitution of the Commonwealth of Massachusetts.

I.  **FACTS**

   A.  **Stephen H. Baird's Constitutional**
       **Rights Are Violated By The**
       **City's Policies And Enforcement Actions.**

Mr. Baird is the Executive Director of CAA and a musician and performer with over three decades of performance experience. Mr. Baird has performed in the United States and internationally including at the Kennedy Performing Arts Center and at over five hundred college campuses, libraries, schools, parks, camps, television programs, festivals, concerts and theaters.  Mr.

Baird and his performances have been featured in Time, Newsweek, The Boston Globe, and The New York Times.  <u>Declaration of Stephen H. Baird</u>, ¶¶ 2, 3 (attached as Exhibit A).

Mr. Baird has been ordered numerous times by officers and agents of the City to stop exercising his rights to play musical instruments, to perform, or to solicit peacefully and receive consideration for these activities in the public streets, sidewalks, grounds and parks of the City of Boston.  The City's violations of Mr. Baird's rights have been recent, and frequent, as follows:

    **1.    <u>June 19, 2004 Incident On Boston Common</u>**.

On June 19, 2004, Mr. Baird was entertaining a group of passersby on the Boston Common by playing the hammered dulcimer when he was approached by Boston Parks and Recreation Department Ranger 217.  The Ranger told Mr. Baird that he was not allowed to perform music in the Boston Common, even though Mr. Baird presented his Itinerant Musician License to the Ranger.  The Ranger initially stated that a permit was required from the Parks Department but later stated that the Parks Department will not issue permits for performers.  Mr. Baird then moved from the location where he first encountered the Ranger so he could continue his performance at another location on the Common. <u>Baird Declaration</u>, ¶ 4.

4

**2.   <u>July 18, 2004 Incident On Boston Common.</u>**

On July 18, 2004, after the Police Department's lawyer had assured Mr. Baird that the Police Department had revoked Police Rule 75 and that she had directed law enforcement officers not to enforce the Ordinance and Rule against artists, Mr. Baird was again told he was not allowed to perform music in the Boston Common by Ranger 217.  On this occasion, Stephen Baird was entertaining a group of passersby by playing an acoustic guitar and singing a ballad.  The Ranger again stated that a permit was required from the Parks Department and that Mr. Baird must move off of the path and onto the grass.  Ranger 217 called a Mounted Ranger to the scene and repeated his demand that Mr. Baird move. <u>Baird Declaration</u>, ¶ 5.

**3.   <u>August 27, 2004 Incident On Dock Square.</u>**

On August 27, 2004, three weeks after the City was served with the Complaint, Mr. Baird was told by an officer of the Boston Municipal Police that he is not allowed to perform in the shadow of Samuel Adams in Dock Square.[1] <u>Baird Declaration</u>, ¶ 6.

As a result of the chilling effect of the continuing threat

---

[1] Samuel Adams was a champion of the right to express oneself through public demonstration, songs and printed pamphlets on the streets and public parks. <u>See</u>, <u>e.g.</u>, Paul Lewis, *The Grand Incendiary*, 91 (1973) ("A large crowd paraded through town, then gathered for a band concert, everyone sang the 'American Song of Liberty,' to the tune of 'God Save the King,' the new lyrics being provided for the occasion by none other than Sam Adams.") (attached as Exhibit B).

of enforcement, Mr. Baird is reluctant to perform in the City of Boston and avoids venues in Boston that would be open to him absent the City's unconstitutional laws and conduct. <u>Baird Declaration</u>, ¶ 7.

### B.  CAA's Members' Constitutional Rights Are Violated By The City's Policies And Enforcement Actions.

CAA is a non-profit Massachusetts corporation dedicated to expanding public awareness of, participation in and support of the arts through performances and festivals, exhibits and workshops, publicity, educational forums, non-profit arts management consultation services, and collaborative projects. CAA's members include musicians, singers, actors, magicians, puppeteers, portrait artists, and caricature artists, among others. <u>Baird Declaration</u>, ¶ 3. CAA has capacity to sue for violation of the Constitutional rights of its members pursuant to Federal Rule of Civil Procedure 17(b).[2]

Rosanna Lee Cohen, a CAA member, singer and guitar player known by the name Rosanna Lee, has recorded two albums and performed in cities across the country. The response Ms. Lee received playing on the streets of Boston encouraged her to pursue her musical career seriously. Ms. Lee recorded her first

---

[2] See <u>Friends of the Earth v. Laidlaw Environmental Services</u>, 528 U.S. 167, 181 (2000); <u>Secretary of Maryland v. Joseph H. Munson Co.</u>, 467 U.S. 947, 956-7 (1984).

album with a Boston producer who heard her playing on Newbury Street.  Declaration of Rosanna Lee, ¶¶ 2, 4, 5 (attached as Exhibit C).

Ms. Lee has been ordered by officers of the City to stop performing on the City's sidewalks.  For example, in or about August 2003, Ms. Lee was repeatedly required by officers of the Boston Police Department to stop her performances on Newbury Street, even though Ms. Lee presented the officers with her Itinerant Musician License.  Ms. Lee has since left the City to pursue her career in California. Lee Declaration, ¶¶ 2, 6, 7, 8.

These incidents make clear that the City and its various law enforcement agents have a long history of and present involvement in banning street performers from exercising their constitutional rights.

## II.  ARGUMENT

### A.  A Preliminary Injunction Is Necessary To Prevent Further Irreparable Harm From The City's Enforcement Of Its Unconstitutional Laws, Policies and Customs.

CAA and Mr. Baird are entitled to a preliminary injunction to prevent the City, during the pendency of this action, from continuing to enforce its facially unconstitutional laws, policies and customs.  If the City is not enjoined, Plaintiffs will continue to suffer irreparable harm from the enforcement of the City's unconstitutional laws, policies and customs.

Courts within the First Circuit evaluate requests for preliminary injunctive relief according to four criteria: (i) the likelihood of success on the merits, (ii) the potential for irreparable harm if the injunction is denied, (iii) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues, and (iv) the effect (if any) of the court's ruling on the public interest.  See <u>Ross-Simons of Warwick, Inc.</u> <u>v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir. 1996).  All four factors counsel in favor of granting preliminary injunctive relief here.

> **B.    CAA And Mr. Baird Face Irreparable Harm In**
> **     <u>The Absence of Immediate Injunctive Relief</u>.**

CAA and Mr. Baird face additional irreparable harm if this Court declines to grant a preliminary injunction.  Despite the pendency of this action, the City continues to enforce its unconstitutional laws, policies and customs, preventing Mr. Baird from performing on the Boston Common and in Dock Square. Accordingly, there is a significant potential that Mr. Baird and CAA members will be deprived of their First Amendment rights if the City is not enjoined.

The enforcement of facially unconstitutional laws resulting in the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes the type of

irreparable harm necessitating preliminary injunctive relief. See Elrod v. Burns, 427 U.S. 347, 373 (1976) (affirming preliminary injunctive relief enjoining threats of dismissal for failure to provide support for the employer's favored political party); Dombrowski v. Pfister, 380 U.S. 479, 489 (1965) (affirming preliminary injunctive relief enjoining enforcement and threats of prosecution for violation of a law found to facially violate the First and Fourteenth Amendments); see also New York State Bar Assn. v. Reno, 999 F.Supp. 710 (N.D.N.Y. 1998) (affirming preliminary injunctive relief enjoining enforcement of a facially unconstitutional criminal statute even though the New York Attorney General stated the Department of Justice would not enforce the statute and it was never applied).

The City's unconstitutional laws, practices, policies, and customs have a chilling effect on First Amendment expression even in the absence of a threat of prosecution. As the Supreme Court noted in Elrod, the First Amendment is implicated whenever free speech is "either threatened or in fact being impaired at the time the relief [is] sought." 427 U.S. at 373 (emphasis added). See also New York State Bar Assn., 999 F.Supp. at 715 ("First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the in terrorem effect of the statute.").

Based on recent events, there is a significant potential that Mr. Baird and other Artists and Members of CAA once again will be deprived of their First Amendment rights to perform if the City is not enjoined.

### C. CAA And Mr. Baird Have A Substantial Likelihood Of Success On The Merits Of Their Claims Because The Ordinance And Rule Are Facially Unconstitutional.

CAA and Mr. Baird are likely to succeed on the merits of their claims that Boston Municipal Ordinance § 16-12.24 and Boston Police Rule 75 are unconstitutional in violation of the Plaintiffs' free speech and equal protection rights under the First and Fourteenth Amendments to the Constitution of the United States and the Constitution of the Commonwealth of Massachusetts.  Whether the City's recent enforcement actions are based on these provisions, or some other rule or regulation, those actions are unconstitutional because they are not content neutral, are not narrowly tailored to serve a significant or substantial government interest, and do not leave open ample alternative channels for communication of the information.

"Music, as a form of expression and communication, is protected under the First Amendment." Casey v. City of Newport, 308 F.3d 106, 110 (1st Cir. 2002) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 790 (1989)).  In addition, performance art, visual art and other forms of expression communicated

without words by members of CAA and others are also protected under the First Amendment.  See Casey, 308 F.3d at 110 ("[A] narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' would never reach the unquestionably shielded paintings of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll.") (quoting Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc., 515 U.S. 557, 569 (1995)); see also Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996) (visual art).

To succeed on a First Amendment challenge, a plaintiff must show that the time, place, or manner restriction on protected expression is justified without reference to the content of the regulated speech.  See Clark v. Community For Creative Non-Violence, 468 U.S. 288, 293 (1984); Ward, 491 U.S. at 791.  A content-neutral time, place, or manner regulation must be narrowly tailored to serve a significant or substantial governmental interest and must leave open ample alternative channels for communication of the information.  See Clark, 468 U.S. at 293; Ward, 491 U.S. at 799.

1.   **The Ordinance and Rule Are Not Narrowly Tailored To Serve A Significant Or Substantial Government Interest.**

A restriction on speech is narrowly tailored if the regulation is "not substantially broader than necessary to achieve the government's interest."  Casey, 308 F.3d at 113 (discussing Ward, 491 U.S. at 799).  Judge Lipez's analysis of the Ward standard in Casey emphasizes that the court must consider less-burdensome alternatives:

> To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests.  Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.  Casey, 308 F.3d at 112 (quoting Ward, 491 U.S. at 799-800).

The challenged Ordinance and Rule are substantially broader than necessary to protect the public safety.  Evaluating the City of Alexandria, Virginia's public safety concerns, the Fourth Circuit held that there is "no safety interest substantial enough to outweigh the plaintiff street musician's First Amendment interests."  Davenport v. City of Alexandria, Va., 748 F.2d 208, 210 (4th Cir. 1984).  In its evaluation, the Court considered an array of public safety issues, including:

> the rate of pedestrian traffic, the working population of office buildings, the volume of vehicular traffic, the availability of vehicular parking, the typical characteristics and historical patterns of audiences

12

> for street performances, the composition of the area
> as to businesses, residences, and public buildings,
> the width of sidewalks, the incidence of pedestrian
> congestion at various times, the projected development
> of the district, and the availability of alternative
> forums for expression or alternative means of
> regulating traffic flow.  Davenport, 748 F.2d at 210.

Boston Police Rule 75 prohibits all public performance within Downtown Boston[3] except between the hours of 6 P.M. and 9 P.M. and prohibits all public performance on Sundays.  Boston Police Rule 75 § 6.  The First Circuit found a similar no-singing restriction to "burden substantially more speech than necessary to achieve [the City's] interest in noise reduction." Casey, 308 F.3d at 120; see also Davenport, 748 F.2d at 210 (public safety concerns held not substantial enough to outweigh street musicians' First Amendment interests).

The Rule also prohibit all performance within 300 feet of a building following an order to desist by a Police Officer or an occupant, providing no guidelines to direct the judgment of the Officer and no avenue for appeal for the musician.  Boston Police Rule 75 § 6.  See Shuttlesworth v. Birmingham, 394 U.S. 147, 150-151 (1969) (A content-neutral time, place, and manner regulation must not vest public officials with unbridled discretion over permitting decisions).

---

[3] "Downtown Boston" refers to the restricted performance territory defined by Boston Police Rule 75 § 6 and illustrated in the map that the City at least until recently distributed to Licensed Itinerant Musicians.

Only artists whose principal occupation is that of an itinerant musician may apply for an Itinerant Musician License. Boston Police Rule 75 § 4.  See Casey, 308 F.3d at 120.  And a female licensed itinerant musician is not allowed to play on a musical instrument unless she is accompanied by an adult male licensed itinerant musician.  Boston Police Rule 75 § 8.  See Casey, 308 F.3d at 120.

Even if Police Rule 75 was somehow recently rescinded, Boston Municipal Ordinance § 16-12.24 standing on its own unconstitutionally restricts the expressive activities of bell-ringers and licensed itinerant musicians.  The Ordinance grants the Police Commissioner complete discretion to regulate and enforce regulations restricting musicians' conduct.  The Supreme Court held in Shuttlesworth that a public official must not be given unbridled discretion over permitting decisions in a time, place, or manner regulation.  394 U.S. at 150-151.

In addition, the Ordinance is unconstitutionally vague. First, the Ordinance permits only "musicians" or "itinerant musicians" the right to make music or noise on the public streets, but ignores and potentially limits the rights of other artistic performers to make music or noise.  Next, the Ordinance distinguishes the license requirements for "musicians" (who apparently do not need a license to make music), from "itinerant musicians" (who must obtain a license), yet provides no guidance

14

on what makes a performer a "musician" versus an "itinerant musician."

In short, the restrictions present in the Police Rule and the Ordinance burden substantially more speech than necessary to achieve any of the government's interests.

### 2. The Ordinance and Rule Do Not Leave Open Ample Alternative Channels For The Type of Expressive Activity That Is Being Restricted.

A regulation leaves open ample alternative channels for the type of expressive activity that is being restricted if "it does not attempt to ban any particular manner or type of expression at a given place or time." Ward, 491 U.S. at 803.

Street artists seek to reach an audience that might not choose to attend an organized or formal performance event or that might feel excluded or alienated from these more formal forums. See Bery v. New York, 97 F.3d 689, 698 (2d Cir. 1996). The public expression of music and visual art is a form of communication between the artist and the public not possible in enclosed, separated spaces. See Bery, 97 F.3d at 698.

Artists who are still developing their talent and their career might not be interested in reaching those members of the public who attend concert halls or galleries. See Bery, 97 F.3d at 698. For this reason and others, the street is the birthplace and the melting pot of many new genre of artistic expression. See Matrovincenzo v. City of New York, 313

F.Supp.2d 280 (S.D.N.Y. 2004) (graffiti art).  Absent an available public forum, these artists and new artistic expressions are silenced.

Street performing is a unique form of artistic expression that can only take place in a public forum.  Street performances by artists like Mr. Baird and other members of CAA generate income via donations and recording sales, provide opportunities for future bookings, and allow the artists to try out material before an audience.  Artists restricted from performing on the public streets and parks of the City have no alternative channel of communication for their chosen expression.

**3.    The Ordinance and Rule Are
Unconstitutional Restrictions
On The Content Of Speech.**

A regulation is content-based if "the government has adopted [the] regulation of speech because of disagreement with the message it conveys." <u>Ward</u>, 491 U.S. at 791.  Content-based regulations are subject to strict scrutiny and must be shown to be necessary to serve a compelling state interest and be narrowly drawn to achieve that end.  <u>See</u> <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45 (1983).

Police Rule 75 is content-based because it denies musicians the right to solicit peacefully and receive consideration for their performances.  Boston Police Rule 75 § 11.  Soliciting contributions is expressive activity that is protected by the

First Amendment.  <u>See</u> <u>Benefit v. City of Cambridge</u>, 679 N.E.2d
184 (Mass. 1997) (citing <u>Schaumburg v. Citizens for a Better
Env't</u>, 444 U.S. 620 (1980)); <u>see also</u> <u>Goldstein v. Town of
Nantucket</u>, 477 F.Supp. 606, 609 (D.Mass. 1979) ("The fact that
plaintiff accepts contributions of passersby during his public
performances … does not dilute plaintiff's protection of the
First Amendment.").  No compelling state interest warrants
prohibiting an artist's peaceful solicitation.

The Ordinance and Rule also are content-based because they
single out one type of expression—the use of musical
instruments—for different treatment than other forms of
expression that present the same government concerns.  <u>See</u>,
<u>e.g.</u>, <u>Burk v. Augusta-Richmond County</u>, 365 F.3d 1247, 1251 (11th
Cir. 2004) (holding content-based a regulation targeting
political expression).  A law is content-based if a significant
number of communications, raising the same problem that the law
was enacted to solve, fall outside the law's scope.  <u>See</u> <u>id.</u> at
1252 (citing <u>Hill v. Colorado</u>, 530 U.S. 703, 723 (2000)).
Speakers who use musical instruments fall within the scope of
the Rule and Ordinance, while others, such as singers, actors,
preachers, and political activists, who have the same, or
perhaps a greater, impact on government interests, fall outside
the scope of the Ordinance and Rule.  <u>See</u> <u>Burk</u>, 365 F.3d at
1252.  Because the Rule and Ordinance distinguish among speech

instances that are likely to raise the same concerns to which
the regulations are addressed, they are not content-neutral
restrictions on the time, place or manner of the speech.  <u>See</u>
<u>Burk</u>, 365 F.3d at 1253.

### D. The Balance Of Hardships Favors CAA And Mr. Baird.

The balance of harms weighs in favor of CAA and Mr. Baird.
As described above, CAA and Mr. Baird will suffer irreparable
harm if the City is allowed to continue to enforce the facially
unconstitutional Ordinance and Rule.  Members of CAA and Mr.
Baird are harmed each time their Constitutional freedoms are
either threatened or in fact impaired.  <u>See</u> <u>Elrod</u>, 427 U.S. at
373; <u>Ross-Simons</u>, 102 F.3d at 19.  There is no evidence that the
City will be harmed by the issuance of a preliminary injunction.

### E. The Public Interest Supports The Grant Of A Preliminary Injunction.

There is no public interest in allowing the City to
continue to enforce a facially unconstitutional Ordinance and
Police Rule.  To the contrary, numerous courts have noted the
overriding public interest of ensuring all street artists and
all modes and subjects of expression are sufficiently protected
by the First Amendment.  <u>See</u> <u>Ward</u>, 491 U.S. 781 (1989); <u>Casey</u>,
308 F.3d 106 (1st Cir. 2002); <u>Bery</u>, 97 F.3d 689 (2d Cir. 1996);
<u>Davenport</u>, 748 F.2d 208 (4th Cir. 1984); <u>Friedrich v. City of</u>
<u>Chicago</u>, 619 F.Supp. 1129 (N.D.Ill. 1985); and <u>Goldstein v. Town</u>

of Nantucket, 477 F.Supp. 606 (D.Mass. 1979) (holding
unconstitutional the restrictions of a transient vendor bylaw as
applied to a street musician).

In addition, street performers and artists provide a public
amenity that enhances the character of a city for all its
inhabitants by encouraging potential customers to linger while
they experience the performances of the street entertainers.
William H. Whyte, City: Rediscovering the Center 36 (1988)
(attached as Exhibit D).[4]  Local residents and scholars agree
that street musicians foster greater social interaction and
meaningful artistic encounters.  See, e.g., Harvey A.
Silverglate and Dan Poulson, Killjoy Was Here, The Boston
Phoenix, September 3, 2004, at 1, 28 (describing the positive
effect of the Cambridge, Massachusetts street performing
ordinance on the economy and community) (attached as Exhibit E).

Not only will the public interest not be harmed by entry of
a preliminary injunction in this action, but the rights of all
members of the public will protected from further
unconstitutional deprivation by law enforcement officials
enforcing unconstitutional laws, policies, and customs.

---

[4]The late William H. Whyte was a pivotal expert witness in two federal court
cases regarding street entertainers, Davenport v. City of Alexandria, Va.,
748 F.2d 208 (4th Cir. 1984) and Friedrich v. City of Chicago, 619 F.Supp.
1129 (N.D.Ill. 1985).  In both cases, the city ordinances restricting street
performances were held unconstitutional.

## CONCLUSION

For the reasons set forth above, CAA and Mr. Baird respectfully request that the Court grant a preliminary injunction to prevent additional deprivations of Plaintiffs' First Amendment rights until a trial on the merits, and grant CAA and Mr. Baird such other and further relief as this Court deems just and proper.


Dated: Boston, Massachusetts
       September 30, 2004

                         Respectfully submitted,

                         PLAINTIFFS
                         COMMUNITY ARTS ADVOCATES, INC.,
                         and STEPHEN H. BAIRD,

                         By their attorneys,


                         _/s/ John J. Cotter_____
                         John J. Cotter (BBO# 554524)
                         Thomas A. Turano (BBO# 552168)
                         Jason A Duva (BBO# 640156)
                         Karen A. Schouten (BBO# 658141)
                         TESTA, HURWITZ & THIBEAULT, LLP
                         125 High Street
                         High Street Tower
                         Boston, Massachusetts 02110
                         Telephone (617) 248-7000
                         Facsimile (617) 248-7100


3115700