UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11618 NG

COMMUNITY ARTS ADVOCATES INC., ET AL.,
    <u>Plaintiffs</u>,

v.

CITY OF BOSTON,
    <u>Defendant</u>.

## **DEFENDANT CITY OF BOSTON'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**I.   INTRODUCTION**

The plaintiffs, Community Arts Advocates Inc. and Stephen Baird ("the plaintiffs") filed suit against the City of Boston ("the City"), the Boston Police Department, Kathleen M. O'Toole, in her official capacity as Police Commissioner, Boston Parks and Recreation Department, and Antonia Pollack, in her capacity as Parks and Recreation Department Commissioner, on July 20, 2004.  On September 15, 2004, the plaintiffs filed an assented to stipulation of dismissal regarding the Boston Police Department, the Boston Police Commissioner, the Boston Parks and Recreation Department, and the Boston Parks and Recreation Commissioner.  The City is the only remaining defendant.

1

The plaintiffs' complaint alleges that Stephen F. Baird's constitutional rights were violated on July 18, 2004 and June 19, 2004 when a Boston Parks Department Ranger told him that he was not allowed to perform music in the Boston Common. The plaintiffs' complaint seeks declaratory relief. On September 30, 2004, the plaintiffs filed a motion for a preliminary injunction, asking this Court to enjoin the City from enforcing or attempting to enforce Boston Police Rule 75 or Boston Municipal Ordinance 16-12.24.

The City opposes the plaintiffs' motion for a preliminary injunction for the following reasons: (1) Boston Police Department Rule 75 of the 1950 Boston Police Department manual has been rescinded and replaced by Rule 403. See Exhibit A; (2) The plaintiffs have a low likelihood of success on the merits because when viewed as a whole the City's ordinances and rules are facially constitutional; (3) The Plaintiffs will not suffer an irreparable injury if the injunction is not granted; and (4) Granting the injunctive relief sought would be contrary to the public interest because it would undermine the City of Boston's ability to regulate the public safety and welfare.

**II. ARGUMENT**

    **A. The plaintiffs' request for relief regarding Boston Police Department Rule 75 is moot as the rule has been rescinded and replaced by Rule 403.**

On September 30, 2004, Boston Police Commissioner Kathleen M. O'Toole issued a Police Commissioner's Special Order rescinding Police Rule 75 and enacting new Police Rule 403. See Exhibit A. The Order, effective immediately, established Rule 403 which governs itinerant musicians and which supersedes all previously issued rules, orders, and other directives on the subject of itinerant musicians, including but not limited to Rule 75 of the 1950 Boston Police Department manual. See Exhibit A. Accordingly, the plaintiffs' request for injunctive relief regarding Rule 75 is moot.

    **B. The plaintiffs' request for injunctive relief should be denied.**

        **1. Standard for injunctive relief.**

A preliminary injunction is an extraordinary equitable remedy, which requires the court to step in and grant relief without the "usual careful procedures and litigation methods" such as discovery, evidentiary hearings, and the full and complete briefing of the issues. Boston's Children First v. City of Boston, 62 F. Supp.2d 247, 253 (D.Mass. 1999). Therefore, for the court to grant the extraordinary remedy of injunctive relief, the party seeking the preliminary injunction

3

must establish that: (1) there is a substantial likelihood of success on the merits of the claim; (2) absent the injunction, there is a significant risk of irreparable harm; (3) the balance of hardships weighs in its favor; and (4) granting the injunction will not harm the public interest. <u>Lanier Professional Services, Inc. v. Ricci</u>, 192 F.3d 1, 4 (1st Cir. 1999).

>   **2.   The plaintiffs have little likelihood of success on the merits.**
>
>       a.   <u>Standard for government restrictions on speech.</u>

The injunctive relief sought by the plaintiffs should not be granted because they have little likelihood of success on the merits. The United States Supreme Court has held that government may impose reasonable restrictions on the time, place, or manner of protected speech, even of speech in a public forum, as long as restrictions are justified without reference to content of regulated speech, are narrowly tailored to serve significant governmental interests, and leave open ample alternative channels for communication of information. <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 790 (1989).

### b. The City's regulatory plan is content neutral.

The City's regulatory plan does not regulate speech based on content. The principal inquiry in determining content neutrality, in speech cases generally and in time, place or manner cases in particular, is whether the government has adopted a regulation of speech because of a disagreement with the message it conveys. <u>Ward</u> 491 U.S. at 790, citing <u>Clark v. Community for Non-Violence</u>, 468 U.S. 268, 295 (1984). <u>See</u> <u>also</u> <u>Hill v. Colorado,</u> 530 U.S. 703, 707 (2000). A regulation is content based if it targets the message that is being communicated. Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech." <u>Community for Creative Non-Violence</u> at 293.

The plaintiffs argue that the City's ordinance is not content neutral because it only requires musicians, rather than other types of performers, to obtain licenses from the police department to perform in the streets. However, the Supreme Court in the <u>Ward</u> case upheld a challenge to a regulation that applied to music only. The plaintiffs in <u>Ward</u> challenged New York City's regulations concerning concerts at an open-air concert arena in Central Park. The City regulations, among other things, required all performances to use the City's

5

amplification equipment and to hire a certified sound engineer. The plaintiffs brought suit after holding an event at the arena with both speeches and musical performances.  The Court noted that the case "has been presented as one in which the constitutional challenge is to the city's regulation of the *musical* aspects of the concert."  The court then held that the City's regulations concerning *musical* performances in the arena were content neutral and narrowly tailored.  Ward at 790. (emphasis added)

Here, the City's justification for regulations concerning street musicians is unrelated to the content of speech.  The City's regulations do not dictate the type of music that may be performed or prevent particular political or artistic messages from being conveyed by the musician.  Under the City's regulatory scheme, a musician is free to play whatever music they wish to play.

      c.    <u>The City's regulatory plan is narrowly tailored to serve an important government interest.</u>

The City's regulatory plan concerning street musicians is narrowly tailored to serve the important government interest of protecting the public safety by (1) ensuring that residents and pedestrians are not exposed to unreasonable noise level and (2) ensuring that the public streets and sidewalks are not

encumbered or blocked by an excessive number of performers or crowds.  The United States Supreme Court has acknowledged the legitimate government interest in public safety and has stated that it "is a traditional exercise of the States' police powers to protect the health and safety of their citizens."  Hill v. Colorado, 530 U.S. 703, 715 707 (2000).  Moreover, "it can no longer be doubted that the government has substantial interest in protecting its citizens from unwelcome noise."  Ward at 796.  This interest is perhaps the greatest when the government seeks to protect "the well being, tranquility, and privacy of the home."  Ward at 796, citing Frisby v. Schultz, 487 U.S. 474, 484 (1988).  But it is by no means limited to that context - the government may act to protect even such traditional public forums as city streets and parks from excessive noise.  See Kovacs v. Cooper, 336 U.S. 77, 86-87 (1949).

   The City's regulatory plan is narrowly tailored in time, place and manner.  In time and place, Boston Police Rule 403 only restricts musicians from playing instruments between 9 p.m. and 9 a.m. on Monday through Saturday and on Sunday within two hundred feet of a place of worship where services are being held or within five hundred feet of an educational building when classes are in session.  Further, both Boston Police Rule 403 and Ordinance 12-12.24 apply only to "streets," not parks and other public buildings.  See Exhibits A and B.  The City of

Boston Municipal Police, which have jurisdiction over City owned properties such as City Hall Plaza and Dock Square, also follow Boston Police Rule 403.  See Exhibit E, Affidavit of Daniel P. Linskey.

In addition, to further the City's purpose of ensuring public safety, the City also has Ordinance 16-26 regulating unreasonable noise levels across the City.  In time and manner, Ordinance 16-26.1 only restricts noise in excess of 50 dBa between the hours of 11:00 p.m. and 7:00 a.m. or in excess of 70 dBa at all other times; or in the absence of an applicable noise level standard, any noise plainly audible at a distance of three hundred feet or in the case of loud amplification devices or similar equipment, noise plainly audible at a distance of one hundred feet.  See Exhibit C.  This ordinance applies to all types of amplified sound and is narrowly tailored to prevent only sound that will unreasonably disturb residents of the City.

The City's regulatory plan, as described above, leaves open ample alternative channels for communication of information or artistic expression if an itinerant musician is not granted a license.  Rule 403 and Ordinance 12-12.24 pertain to streets only.  This leaves numerous alternative channels for communication, including the City's parks.  The City's Parks and Recreation Department has established rules that govern the

public's use of the public parks.  See Exhibits D and F, Affidavit of Eugene Survillo.  These regulations do not prevent musicians from performing music in the City's parks at reasonable hours.

The plaintiffs' complaint and request for a preliminary injunction only challenges Ordinance 16-12.24 and Rule 75, which has been rescinded.  See Exhibit A.  Therefore, the Court need only determine whether the ordinance is constitutionally valid on its face.  When doing so, the ordinance must be construed in light of and as part of the City's entire regulatory plan concerning street musicians.  It is a well settled canon of construction that statutes which relate to the same subject matter should be considered together so that they will harmonize with each other and be consistent with their general objective scope.  See Rathbun v. Autozone, Inc., 361 F.2d 62, 68 (1st Cir. 2004).  This canon of construction, often referred to by the catch phrase "in pari materia," does not necessarily require that the two statutes be enacted at the same time or even that they refer to one another. Id.  See also Burno v. Commissioner of Correction, 399 Mass. 111, 120 (1987) ("Where statutes concern the same subject matter and class of persons, they should be construed together.")  Furthermore, "in evaluating a facial challenge to a state law, a federal court must... consider any limiting construction that a state court or

enforcement agency has proffered." <u>Hoffman Estates v. The Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 494 n. 5 (1982). Here, the City's rules and ordinances together make up a regulatory plan designed to allow free expression while at the same time protecting pedestrians and residents from unreasonable noise levels as well as ensuring the free flow of foot and automotive traffic on the city streets and in the city parks.

Contrary to the plaintiffs' assertion, the City's regulatory scheme does not give unbridled discretion to city officials. <u>See</u> <u>Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 769-772 (1988). First, the plaintiff claims that the ordinance somehow gives the Police Department undue discretion because it does not define the difference between a musician and itinerant musician. According to the definition of the word itinerant, an itinerant musician is one who travels from place to place. Therefore, it is clear on its face that the ordinance requires any musician who travels from place to place on the streets of Boston to first get a license from the Boston Police Department.

Second, the ordinance does not grant the Police Commissioner unbridled discretion because there is an administrative and judicial appeal process provided if a license is denied. Boston Police Rule 403 provides for a hearing

10

regarding a suspension or revocation of an itinerant musician license and provides for judicial review for any applicant or license holder aggrieved by a denial, revocation or suspension of a license.  See Exhibit A.  The City notes that while the plaintiffs claim the City ordinance is constitutionally invalid on its face, the plaintiffs do not allege that any person has ever been denied an itinerant musicians license by the Boston Police Department.

> **3.   The plaintiff will suffer no harm as a result of the City's ordinances and rules, let alone the significant risk of irreparable harm necessary to meet its burden.**

This Court must find a cognizable threat of irreparable harm as an essential prerequisite to the issuance of a preliminary injunction.  See Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 170 (1st Cir. 1998).  Although there is no mechanical test that permits a court to make an exact calculation of the quantum of harm that will suffice to justify interim injunctive relief, the plaintiffs' showing must nevertheless possess some substance; a preliminary injunction is not warranted by tenuous or overly speculative forecast of anticipated harm.  Ross-Simon of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).  Further, a preliminary injunction cannot issue as a remedy of past harms, but instead must be forward looking.  See Comfort v. Lynn Sch. Comm., 100 F.

Supp. 2d 57, 64 (D. Mass. 2000), citing <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 103 (1983) ("past wrongs in themselves do not amount to that real and immediate threat of injury necessary to make out a case or controversy").

Here, the plaintiffs have not satisfied their burden to show that they will suffer an immediate threat of irreparable harm unless this court grants an injunction.  First, as stated above, Police Rule 75 has been rescinded and has been replaced with Police Rule 403. The plaintiffs' constitutional rights will not be harmed in the future because City of Boston Ordinance 12-12.24, and Boston Police Rule 403 are content neutral, reasonable restrictions on the time, place and manner of performing music on the streets of Boston.  Further, neither City of Boston Ordinance 12-12.24 nor Police Rule 403 prevent the plaintiffs from performing in City of Boston Parks.

Moreover, as discussed above, under the City of Boston regulatory structure concerning street musicians, the plaintiffs have multiple avenues to perform music in public forums. Notably, the Plaintiffs' have not cited to any occasion where a musician has been denied an itinerant musicians license by the Boston Police Department.  Even if a musician were denied a license to play in the streets of Boston by the Boston Police Department, this denial would not prevent them from performing in the parks of Boston, including The Boston Common, a highly

12

trafficked public forum. Additionally, none of the regulations governing itinerant musicians prevent musicians from playing a certain type of music or conveying a particular message through their music. The applicable regulations also do not unreasonably restrict the times that musicians may play or the locations where they may play.

> 4. **The balancing of hardships weighs in favor of the City and granting the injunction will harm the public interest.**

The Court must weigh the balance of hardships and consider whether the proposed injunction would harm the public interest. <u>Lanier Professional Services, Inc. v. Ricci</u>, 192 F.3d 1, 4 (1st Cir. 1999). Because the City's rules and ordinances concerning street musicians are constitutional on their face, no hardship is imposed on the plaintiffs by the denial of an injunction. Further, because the regulations as they stand provide abundant opportunity for artistic expression across the City, the plaintiffs will not be prevented from performing if an injunction does not issue.

The City and the public, however, would be harmed if the City were prevented from maintaining its current regulatory structure concerning street musicians. As discussed above, the purpose of the City's rules and regulations is to ensure that the residents of the City are not exposed to excessive noise and

to ensure that the City streets and sidewalks maintain a safe flow of traffic. This Court should not overlook the interest of City residents, some of them "unwilling listeners" to be protected from speech with unduly impinges on their rights to be "left alone." See Hill, 503 U.S. at 716.

### III. CONCLUSION

For the foregoing reasons, the defendant, City of Boston requests that the plaintiffs' Motion for Preliminary Injunction be DENIED.

```
                                Respectfully submitted,
                                DEFENDANT, CITY OF BOSTON
                                Merita A. Hopkins
                                Corporation Counsel
                                By its attorneys:



                                /s Thomas R. Donohue_____
                                Wendy Plotkin, BBO# 647716
                                Thomas R. Donohue, BBO# 643483
                                Assistant Corporation Counsel
                                City of Boston Law Department
                                Room 615, City Hall
                                Boston, MA 02201
                                (617) 635-2902 – Plotkin
                                (617) 635-4039 – Donohue
```