IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMUNITY ARTS ADVOCATES, INC., and STEPHEN H. BAIRD, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BOSTON, <br><br> Defendant. | Civil Action No: 04 11618 NG <br><br> Judge Nancy Gertner |

**PLAINTIFFS' REPLY MEMORANDUM**
**SUPPORTING THEIR MOTION FOR A PRELIMINARY INJUNCTION**

Testa, Hurwitz & Thibeault, LLP

    John J. Cotter (BBO 554524)
      cotter@tht.com
    Thomas A. Turano (BBO 552168)
      turano@tht.com
    Jason A Duva (BBO 640156)
      duva@tht.com
    Karen A. Schouten (BBO 658141)
      schouten@tht.com
    TESTA, HURWITZ & THIBEAULT, LLP
    125 High Street
    High Street Tower
    Boston, Massachusetts 02110
    Telephone (617) 248-7000
    Facsimile (617) 248-7100

    Attorneys for Plaintiff,
    Community Arts Advocates, Inc.,
    and Stephen H. Baird

**TABLE OF CONTENTS**

<u>**PAGE**</u>

I. It Is Undisputed That The Ordinance And The City's Enforcement Actions Are Unconstitutional. .......... 3

II. New Police Rule 403 Does Not Eliminate Plaintiffs' Need For Preliminary Relief. ................. 4

III. New Police Rule 403 and Park Rules §§ 1 (b) and 6 Are Facially Unconstitutional. ..................... 5

  A. New Police Rule 403 Is Not Narrowly Tailored To Serve A Significant Or Substantial Government Interest. ........................ 6

  B. New Police Rule 403 Does Not Leave Open Ample Alternative Channels for Expression. .............. 8

  C. New Police Rule 403 and Park Rules §§ 1(b) and 6 Are Unconstitutional Restrictions On The Content Of Artists' Speech. .................... 10

IV. Conclusion. ........................................... 13

**TABLE OF AUTHORITIES**

                                                                          **PAGES**

**Cases**

Benefit v. City of Cambridge, 679 N.E.2d 184 (Mass. 1997)..... 11

Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996).......... 12

Casey v. City of Newport, 308 F.3d 106 (1st Cir. 2002)......... 6

City of Mesquite v. Aladdin's Castle, 455 U.S. 283 (1982)... 4, 5

Consumers Union v. Admiral Corp., 186 F.Supp. 800
  (S.D.N.Y. 1960) .............................................. 5

Goldstein v. Town of Nantucket, 477 F.Supp. 606
  (D.Mass. 1979) ............................................. 11

Mastrovincenzo v. City of New York, 313 F.Supp.2d 280
  (S.D.N.Y. 2004) ............................................ 12

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
  460 U.S. 37 (1983) ......................................... 10

Schaumberg v. Citizens for a Better Env't,
  444 U.S. 620 (1980) ........................................ 11

Shuttlesworth v. Birmingham, 394 U.S. 147 (1969)........... 3, 7

U.S. v. W.T. Grant Co., 345 U.S. 629 (1953)................ 4, 5

Ward v. Rock Against Racism, 491 U.S. 781 (1989)........... 6, 10

**Statutes**

Boston Municipal Ordinance § 16-12.24.................... passim

Boston Municipal Ordinance § 16-26........................... 7

Boston Municipal Ordinance 16-19.1........................... 9

Rules of the Boston Parks and Recreation Commission....... passim

Boston Police Rule 403................................... passim

iv

Boston Police Rule 75................................... passim

**Other Authorities**

Street Performers Sue Boston Police, Massachusetts Lawyers
   Weekly, August 2, 2004 ................................. 2, 9

**PLAINTIFFS' REPLY MEMORANDUM**
<u>**SUPPORTING THEIR MOTION FOR A PRELIMINARY INJUNCTION**</u>

The City's Opposition proves that there has been, and is, unconstitutional treatment of street performers in Boston. Rather than squarely addressing the unconstitutionality of Boston Municipal Ordinance § 16-12.24 and the enforcement policies, practices and customs of City law enforcement officers, the City's Opposition ignores them. The City has no answer for the sworn facts of Plaintiff Mr. Baird or Ms. Cohen, and instead proposes that a new Police Rule 403 -- replacing a rule that the City must concede is unconstitutional -- will solve the constitutional problem. It does not, however, because new Boston Police Rule 403 itself is facially unconstitutional and does nothing to prevent continued deprivations of Plaintiffs' First Amendment rights under the unconstitutional Boston Municipal Ordinance § 16-12.24, the unconstitutional Park Rules, and the unconstitutional enforcement policies, practices and customs of City law enforcement officers, absent a preliminary injunction.

New Police Rule 403, enacted for the first time on September 30, 2004, provides too little relief too late. As early as June 2004, Police Department attorney Mary Jo Harris assured Plaintiffs that the Department had rescinded Police Rule 75 and instructed all law enforcement officers not to enforce

Rule 75.  Ms. Harris made similar statements to the press, reporting on August 2 that "the rule was recently revised." <u>Street Performers Sue Boston Police</u>, Massachusetts Lawyers Weekly, August 2, 2004 (a copy is attached as Exhibit A).  Even after making these statements, the City refused to provide written confirmation of the rescission and refused to confirm the state of the law.  In fact, the Police continued to rely on Police Rule 75 as recently as September 2, when Mr. Baird obtained his 2004-05 Itinerant Musician License (a copy is attached as Exhibit B), which relies on Police Rule 75.  The City took <u>no</u> <u>action</u> until September 30, 2004, <u>after</u> Plaintiffs filed their motion for a preliminary injunction.

 Even if new Rule 403 were facially constitutional--which it is not, as detailed below -- Plaintiffs require confirmation that the City and its law enforcement agents <u>will</u> <u>not</u> <u>enforce</u> or attempt to enforce <u>any</u> Rule or Ordinance in any way that unconstitutionally interferes with the rights of any performer to play musical instruments, to perform, to display their art, or to solicit peacefully and receive consideration for these activities at any time on any City street, sidewalk, ground, or park.  In view of the City's past unconstitutional behavior, there is no reason to believe that a new, itself unconstitutional, Rule will rectify the sorry way the City

2

treats street artists and performers.  The City must be enjoined now, to prevent further deprivation of rights.

**I.  It Is Undisputed That The Ordinance And The City's Enforcement Actions Are Unconstitutional.**

The City's Opposition neither addressed nor modified facially unconstitutional Boston Municipal Ordinance § 16-12.24. Indeed, the fact that the Police Commissioner was able to enact Police Rule 403 via "Special Order," without notice or comment, confirms the Police Commissioner's ability and proclivity to use the Ordinance to unconstitutionally regulate the activity of itinerant musicians with unbridled discretion.  See Shuttlesworth v. Birmingham, 394 U.S. 147, 150-151 (1969) (a content-neutral time, place, and manner regulation must not vest public officials with unbridled discretion over permitting decisions).

Additionally, the City neither denied nor addressed the unconstitutional enforcement of the City's policies, practices and customs by its law enforcement officers.  In fact, Declarants from the Parks Department and the Municipal Police do not deny the unconstitutional enforcement actions that Plaintiffs allege occurred.  (See Survillo Aff.; Linskey Aff.). The unconstitutional enforcement actions do not rely on Police Rule 75, but may be based on any restriction within the regulatory landscape, including the unconstitutional Police

3

Rule, Ordinance, or any other rule, policy, practice or custom used by law enforcement officers to deprive artists of their rights. In fact, the City's enforcement actions against performers other than itinerant musicians necessarily have involved and will involve regulations other than Ordinance § 16-12.24 and Police Rules 75 and 403, which address only "itinerant musicians."

> II. **New Police Rule 403 Does Not Eliminate Plaintiffs' Need For Preliminary Relief.**

The Police Commissioner's enactment of new Police Rule 403 has no effect on the unconstitutional Ordinance, Park Rules, or unconstitutional enforcement practices, policies and customs of the City's law enforcement officers. Indeed, Defendants admit (See Opp. at 8-9.) that the remedial Rule does not reach the City's parks, where Park Rangers continue to enforce Park Rules to deprive Plaintiffs and others of their rights.

Additionally, the City's voluntary rescission of Police Rule 75 and enactment of new Police Rule 403 does not eliminate Plaintiffs' need for preliminary relief or this Court's ability to grant that relief. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289-290 (1982) (citing U.S. v. W.T. Grant Co., 345 U.S. 629, 632 (1953))

4

(finding the City's voluntary repeal of objectionable ordinance language would not preclude the City from reenacting precisely the same provision if the lower court's judgment were vacated and, therefore, evaluating the merits of the court's holding on appeal). See also Consumers Union v. Admiral Corp., 186 F.Supp. 800 (S.D.N.Y. 1960) (granting a preliminary injunction following defendant's voluntary cessation of offending activity, stating that the "plaintiff is not required to rest upon defendant's assurances").

Although cessation is a factor bearing on the court's decision to grant injunctive relief, it is a factor "relating to the exercise rather than the existence of judicial power." City of Mesquite, 455 U.S. at 289. The City bears the burden to establish the issue is moot and, as the Supreme Court stated in W.T. Grant, "[t]he burden is a heavy one." 345 U.S. 633. In fact, Plaintiffs' need for preliminary relief is far from moot because the City has not even attempted to address the unconstitutional Ordinance and enforcement practices, and remedial Police Rule 403 is facially unconstitutional.

### III. New Police Rule 403 and Park Rules §§ 1(b) and 6 Are Facially Unconstitutional.

The new Police Rule 403 and Park Rules §§ 1(b) and 6 are facially unconstitutional, violating Plaintiffs' free speech and equal protection rights under the First and Fourteenth

5

Amendments to the U.S. and Massachusetts Constitutions. The Rules are not content neutral, are not narrowly tailored to serve a significant or substantial government interest, and do not leave open ample alternative channels for communication of the information. See Casey v. City of Newport, 308 F.3d 106, 113 (1st Cir. 2002) (citing Ward v. Rock Against Racism, 491 U.S. 781, 791, 799 (1989)).

### A. New Police Rule 403 Is Not Narrowly Tailored To Serve A Significant Or Substantial Government Interest.

A restriction on speech is narrowly tailored if the regulation is "not substantially broader than necessary to achieve the government's interest." Casey, 308 F.3d at 113 (discussing Ward, 491 U.S. at 799). When evaluating the challenged Rule, the court must consider less-burdensome alternatives. Casey, 308 F.3d at 112 (the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.").

Police Rule 403 is substantially broader than necessary to protect the public from unreasonable sound levels and crowded sidewalks. The Rule treats the music of itinerant musicians differently than all other sources of sound. Although the City claims that its sound level restrictions are reasonable (Opp. at 8), itinerant musicians are prohibited from making any sound

6

between the hours of 9 P.M. and 9 A.M., whereas all other sound in the City is merely restricted to prescribed sound levels between the hours of 11 P.M. and 7 A.M.  Boston Police Rule 403 § 5; Boston Municipal Ordinance § 16-26.  Even though the justification for the Rule is to protect citizens from <u>unreasonable</u> sound, the Rule does not specify a reasonable decibel limit or any objective method to determine the reasonableness of the sound.  Instead, the vague sound restrictions allow law enforcement officers continued unfettered discretion in their enforcement actions and make the Rule meaningless.

Additionally, the Rule restricts all performance within "the business section … as defined in section 4 and 5 of this rule" but nowhere defines this restricted area.  Boston Police Rule 403 §§ 2, 4, 5.  Rescinded Police Rule 75 restricted all performances within "Downtown Boston" and was overly broad, in contrast to the undefined and vague restriction of Rule 403, which does not define the restricted areas and leaves too much discretion to law enforcement officers.  Compare Boston Police Rule 75 § 6 with Boston Police Rule 403 §§ 2, 4, 5.  <u>See Shuttlesworth</u>, 394 U.S. at 150-151 (a content-neutral time, place, and manner regulation must not vest public officials with unbridled discretion).

7

The new Rule actually makes itinerant musician permits <u>less</u> accessible by increasing the annual permit fee six-fold, from $10 to $60.  Compare Boston Police Rule 75 with Boston Police Rule 403 § 3.  Oddly enough, according to the City's definition of "itinerant," a musician who does not travel from place to place cannot get a license and is barred from performing under Ordinance 16-12.24.  (Opp. at 10.)

The City also raises the irrelevant position that a right to appeal any license <u>denial</u> eliminates any unbridled discretion.  That right does not fix an otherwise unconstitutional scheme.  Police Rule 403's right of appeal only applies to itinerant musicians and may only be used to challenge the denial or revocation of a permit, but provides no avenue to contest unconstitutional enforcement actions.  Boston Police Rule 403 § 7.

Finally, Police Rule 403 says nothing with respect to the First Amendment rights of other performers and CAA members, including actors, magicians, puppeteers, portrait artists, and caricature artists, leaving them at the whim of unbridled enforcement action.

    **B.    New Police Rule 403 Does Not Leave Open Ample Alternative Channels for Expression.**

The City argues that a license is <u>not</u> required to perform in the City's parks.  (Opp. at 8-9.)  However, statements

8

attributed to Police attorney Mary Jo Harris that a "proper police license" is required to perform on the Boston Common contradict this argument. <u>Street Performers Sue Boston Police</u>, Massachusetts Lawyers Weekly, August 2, 2004 (Exh. A).

The Parks Department Rules, which the City relies on to demonstrate alleged reasonableness (Opp. at 8-9), cannot compensate for the deficiencies of the challenged Police Rule, Ordinance and enforcement actions. In any case, Park Rules §§ 1(b) and 6 are also facially unconstitutional content-based restrictions on peaceful solicitation, as explained in § III.C. of this Memorandum.

Even if the Ordinances and Park Rules were reasonable on their face, the City's <u>enforcement</u> of those rules is <u>not reasonable</u>. In fact, the City has not challenged any testimony by Mr. Baird or Ms. Cohen, including that Mr. Baird was told by a Park Ranger on the Boston Common that people might trip over his hammered dulcimer, creating a dangerous public safety hazard. (Baird Decl. ¶4.) Or that on another occasion Mr. Baird was threatened with arrest by the same Park Ranger, this time accompanied by a horse-mounted Ranger, if Mr. Baird did not move onto the grass with his guitar. (Baird Decl. ¶5.) This threat placed Mr. Baird in a Catch-22, because another Boston Municipal Ordinance, 16-19.1 (a copy is attached as Exhibit C), expressly prohibits standing or sitting upon the grass in the

9

Common or other public grounds of the City.  Therefore, even if the City's Ordinances and Rules were reasonable, they are enforced in an unconstitutional manner to prevent artists from exercising their constitutional rights.

> **C.  New Police Rule 403 and Park Rules §§ 1(b) and 6 Are Unconstitutional Restrictions On The Content Of Artists' Speech.**

Police Rule 403 retains the same unconstitutional content-based restrictions on solicitation and differential treatment of instrumental musicians present in rescinded Police Rule 75. Similarly, Park Rules §§ 1(b) and 6 are content-based restrictions on peaceful solicitation and the sale of expressive works, such as original visual art and musical recordings.

A regulation is content-based if "the government has adopted [the] regulation of speech because of disagreement with the message it conveys." Ward, 491 U.S. at 791.  Content-based regulations are subject to strict scrutiny and must be shown to be necessary to serve a compelling state interest and must be narrowly drawn to achieve that end.  See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).

Police Rule 403 is content-based because it denies musicians the right to solicit peacefully and receive consideration for their performances.  Boston Police Rule 403 § 6.  In addition to prohibiting peaceful solicitation, the Rule expressly prohibits licensed itinerant musicians from "ringing

10

doorbells, knock [sic] on doors, or enter [sic] stores or buildings for the purpose of soliciting money." Boston Police Rule 403 § 6.

Park Rule § 1(b) is content-based because it denies all persons the right to peacefully "beg or canvass for alms." Boston Park Rule § 1(b). Additionally, Park Rule § 6 prohibits artists from "engag[ing] in any commercial enterprise," including selling original expressive works. Boston Park Rule § 6.

Soliciting contributions, through spoken or written communication while on the street or from door to door, is expressive activity protected by the First Amendment. See Benefit v. City of Cambridge, 679 N.E.2d 184 (Mass. 1997) (citing Schaumberg v. Citizens for a Better Env't, 444 U.S. 620 (1980)); see also Goldstein v. Town of Nantucket, 477 F.Supp. 606, 609 (D.Mass. 1979) ("The fact that plaintiff accepts contributions of passersby during his public performances … does not dilute plaintiffs' protection of the First Amendment.").

Indeed, the Supreme Court held in Schaumberg that "charitable appeals for funds, on the street or door to door, involve a variety of speech interests . . . within the protection of the First Amendment." 444 U.S. at 632 (emphasis added). The Benefit court held that "there is no distinction of constitutional dimension between soliciting funds for oneself

11

and for charities and therefore . . . peaceful begging constitutes communicative activity protected by the First Amendment." 424 Mass. at 923.

Additionally, solicitations for the sale of expressive works, such as original visual art or musical recordings, is protected expression. Street marketing of original artwork is a part of the artist's expressive message and conveys, for example, the "real" world struggle of artists to make a living and interact with their environment. See Bery v. City of New York, 97 F.3d 689, 696 (2d Cir. 1996) (holding that the display and sale of original artwork in public areas is entitled to full First Amendment protection); see also, Mastrovincenzo v. City of New York, 313 F.Supp.2d 280 (S.D.N.Y. 2004) (protecting the public display and sale of original graffiti art). No compelling state interest warrants prohibiting an artist's peaceful solicitation or sale of original artwork.

**IV.  Conclusion**

    For the reasons set forth above, the Court should grant CAA and Mr. Baird's motion for preliminary injunction.

Dated: Boston, Massachusetts
      December 2, 2004

                              Respectfully submitted,

                              PLAINTIFFS
                              COMMUNITY ARTS ADVOCATES, INC., and
                              STEPHEN H. BAIRD,

                              By their attorneys,


                              _/s/ John J. Cotter_____
                              John J. Cotter (BBO 554524)
                                cotter@tht.com
                              Thomas A. Turano (BBO 552168)
                                turano@tht.com
                              Jason A Duva (BBO 640156)
                                duva@tht.com
                              Karen A. Schouten (BBO 658141)
                                schouten@tht.com
                              TESTA, HURWITZ & THIBEAULT, LLP
                              125 High Street
                              High Street Tower
                              Boston, Massachusetts 02110
                              Telephone (617) 248-7000
                              Facsimile (617) 248-7100

3148829