# EXHIBIT A

**to**

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF BOSTON'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(c)</u>**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

COMMUNITY ARTS ADVOCATES, INC. )
and STEPHEN H. BAIRD, )
     Plaintiffs, )
      )
      )
v. )        **CIVIL ACTION NO. 04-11618-NG**
      )
CITY OF BOSTON, )
     Defendant. )
_____ )

## DECLARATION OF STEPHEN H. BAIRD

    I, Stephen H. Baird, declare and state as follows upon personal knowledge:

1.    I am the Executive Director of Community Arts Advocates, Inc., ("CAA") a non-profit Massachusetts corporation dedicated to expanding public awareness, participation in and support of the arts though performances, festivals, exhibits, publicity, education forums, non-profit arts management consultation services and collaborative projects.

2.    CAA has more than 30 members and has a place of business in Jamaica Plain, Massachusetts.

3.    CAA members include musicians, singers, actors, magicians, puppeteers, portrait artists, and caricature artists, among others. I myself am a musician and performer with over three decades of performance experience both in the United States and internationally.

4.    Throughout the last 30 years, I and others have attempted to work with the City of Boston (the "City") to create a reasonable and constitutional regime in the City of Boston under which artists' rights are protected.

5.    Nevertheless, the enforcement of admittedly (by the City) unconstitutional City restrictions has continued up through as recently as the Summer of 2004.

6.    As early as 1972 I began working with the City of Boston to achieve a reasonable and constitutional enforcement regime for artists in the City. In 1973, City officials agreed to stop enforcing some of the most egregious portions of City rules and ordinances with respect to artists and public performers. The City agreed that it would not enforce begging and panhandling ordinances with respect to artists and performers who were not actively soliciting and the City agreed that it would no longer enforce the restrictions contained in the commercial area map that was incorporated into the Police Rules in effect at the time. Although the City did cease enforcement as it had agreed for a time, the enforcement soon began anew, and I have had to fight the same unconstitutional enforcement fight with the City repeatedly since that time.

7.   In 1978 I corresponded with the City of Boston Parks and Recreation Department regarding the ability of artists to perform in City parks and other spaces. In 1979 I corresponded with the then Mayor of the City of Boston, Mayor Kevin H. White, regarding harassment of street performers by Boston Police Officers. During this period of time, artists were threatened with arrest, and in some cases were actually arrested, for performing in public spaces. Despite the efforts of myself and others, these problems have continued to persist over the years.

8.   In 1981 I again brought concerns to the attention of the City that the City had again begun enforcing ordinances that it had agreed not to enforce in the early 1970s The City of Boston agreed to enter into negotiations regarding the restrictions on artists in some of the City's downtown areas at that time.

9.   Nevertheless, unconstitutional enforcement against artists continued on and off, and in 1991 the City was again enforcing unconstitutional restrictions that it had agreed that it would not enforce in 1973.

10.  In 1991 I again approached the City of Boston in an attempt to change the unconstitutional ordinances and the enforcement regime in the City. At that time, I presented a new proposed ordinance regarding artists and performers in the City of Boston which was designed to be consistent with all constitutional and other requirements of law. The City was unwilling to respond to my proposal in any substantive manner.

11.  In November and December of 2002 I had meetings with Boston City Councilor John Tobin regarding the police harassment of artists and performers and the curtailment of performances by Rosanna Cohen on Newbury Street. I presented him with a model ordinance, a copy of the Cambridge, MA ordinance regarding public performances, and copies of the decisions in certain Court cases that I thought relevant. I proposed that the City Council rescind the offending Boston rules. No action was taken.

12.  The unconstitutional enforcement regime has continued in the City as recently as 2004. In the spring of that year, I again approached the City of Boston regarding the enforcement against artists and performers in the City. In the early summer of 2004, City representatives agreed to meet with me and my attorneys to discuss this issue. At that time the City assured us that the unconstitutional enforcement would not continue and that the ordinance would be rescinded. Nevertheless, unconstitutional enforcement continued during the summer of 2004.

13.  Boston Police Officers and Park Rangers undertaking enforcement actions against artists and performers often have what, in my opinion, is a incorrect understanding of the City ordinances and park and police rules under which they seek to engage in such enforcement.

14.  The present lawsuit was filed on July 20, 2004. Even after that time, the City engaged in unconstitutional enforcement against artists and performers during the summer of 2004.

15. Although I am not aware of any unconstitutional enforcement in the City of Boston since August of 2004, Boston has experienced a particularly harsh winter and there have not been many artists out in recent months.

16. Moreover, I am chilled in my performances in Boston by the past enforcement actions by the City of Boston and by the ordinance and other rules that continue to exist in Boston. It is my opinion, based on long years of awareness of artists' conditions of living and street performance and activism for improvement and discussions with fellow artists, that other artists are similarly chilled.

17. It is my understanding that almost 400 artists and street performers hold licenses to perform in the City of Cambridge under a Constitutional enforcement scheme that I helped to draft. It is my understanding that fewer than two dozen such licenses were held by artists and street performers in the City of Boston under the Boston Municipal Ordinance § 16-12.24 and the associated Police Rules prior to the rescission of those Police Rules. It is my belief that artists and performers were chilled from seeking licenses to perform in Boston and are chilled from performing in Boston because of the unconstitutional and confusing licensing and enforcement scheme that has been in place in Boston. A Constitutional licensing and enforcement scheme or a clear declaration of rights would, in my opinion, help to solve this problem.

18. I am aware on personal knowledge of adoption of workable ordinances and regulations for street performance (some through my assistance) in Cambridge, Massachusetts; Saint Louis, Missouri; Hartford, Connecticut; Worcester, Massachusetts; and Chicago, Illinois. The City of Boston is well aware of these models and failure to consider any such model and failure to issue effective instructions to law enforcement officers on the street are indicative of indifference by the City that must inevitably lead to new episodes of unconstitutional enforcement.

Signed under the pains and penalties of perjury, this the 18th day of March, 2005.

Stephen H. Baird