UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMUNITY ARTS ADVOCATES, INC. )<br>and STEPHEN H. BAIRD, )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF BOSTON, )<br>    Defendant. )<br>) | CIVIL ACTION NO. 04-11618-NG |

**PLAINTIFFS' SURREPLY TO
DEFENDANT CITY OF BOSTON'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiffs Community Arts Advocates, Inc. ("CAA") and Stephen H. Baird ("Baird") (collectively, "Plaintiffs") hereby file this Surreply in opposition to Defendant City of Boston's Motion To Dismiss Plaintiff's (sic) Complaint Pursuant To Fed. R. Civ. P. 12(c) (the "City's Motion to Dismiss") because (1) as the Plaintiffs have demonstrated through affidavits, unconstitutional enforcement continues in the City of Boston despite the repeal of the most egregious City ordinance and the accompanying Police Rules; and (2) absent a declaration of rights by this Court, the City of Boston (the "City") can offer no evidence demonstrating that police and park personnel will not continue to engage in unconstitutional enforcement actions against Plaintiffs when Plaintiffs seek to exercise their rights in the future.

**I.      Unconstitutional Enforcement Continues in the City of Boston:**

As Plaintiffs have demonstrated through affidavits submitted to the Court in recent weeks, and as Plaintiffs further demonstrate through the Declaration of Jason Gardner, (attached as Exhibit A hereto), and the Declaration of Stephen Baird, (attached as Exhibit B hereto), unconstitutional enforcement continues in the City of Boston, despite the repeal of Boson Municipal Ordinance § 16-12.24 ("§ 16-12.24") and Boston Police Rules 75 ("Rule 75") and 403 ("Rule 403").

On Wednesday, March 30, 2005, Plaintiff Stephen H. Baird attempted to perform publicly in the City of Boston for the first time since December 24, 2004. *See* Supplemental Declaration of Stephen H. Baird, filed as Exhibit A to Paper #38; *see also* Exhibit B hereto. Around 1:00 pm on March 30th, Baird set up his hammered dulcimer, along with a mandolin, a guitar and two wooden puppets, by the Sam Adams statue in front of Faneuil Hall in Boston.[1] Several families with children stopped by and sang along with Baird to The Marvelous Toy by Tom Paxton and participated by performing on small percussion instruments. Small groups of 3-6 people also stopped to hear the dulcimer. *Id*.

Around 2:00 pm, a City worker with CHP imprinted on his shirt came by and told Baird that he could not perform in Sam Adams Park. The worker said that Baird needed a permit to perform there. Baird told the worker that he did not need a permit and that the City had stated in Federal Court that he did not need a permit. Baird also directed the City worker to the Corporation Counsel for the City of Boston, Merita Hopkins. The exchange continued. The City worker stated that he knew who Merita Hopkins was. Baird told the City worker that if Baird was not allowed to perform there, then the City worker should have him arrested. *Id*.

The City worker then made a call on his cell phone and asked for a Sergeant to come down. The City worker made some other calls and then went into Faneuil Hall. About 15 minutes later, two Boston Police Officers came by and told Baird that he could not perform in Sam Adams Park. One Officer told Baird that he needed a permit to perform. He also told Baird that Sam Adams Park was Federal Property. Baird told the Officer that it was his understanding that he did not need a permit based on what the City had said in Federal Court. The Officer said Baird could go play on the sidewalk, but not in the park. Baird then showed the Officer a copy of the December 23, 2004 Electronic Order of the Federal District Court, which Baird had copied onto CAA letterhead (Exhibit B to Supplemental Declaration of Stephen H. Baird,

---

[1] This area is known both as Sam Adams Park and as Dock Square. This area consists of the area around the Sam Adams statue located in front of Faneuil Hall and located across the street from Boston City Hall.

filed as Exhibit A to Paper #38). After the Officer read the document, he tossed it back at Baird and stated "the courts do not know what they are doing." The Officer then said that it was a nice day and that he wouldn't arrest Baird at that time. Baird was intimidated by his interaction with the Boston Police, and he packed up his instruments and left Sam Adams Park. *Id*.

This interaction took place on March 30, 2005, more than three months after Counsel for the City of Boston represented to this Court that Rule 75, Rule 403, and § 16-12.24 were not being enforced and had been or would be rescinded and/or repealed. This interaction also took place almost 3 months after the City of Boston actually rescinded Boston Police Rule 403,[2] 6 months after the City of Boston rescinded Police Rule 75,[3] and on the same day that the Boston City Council voted to repeal § 16-12.24, a legislative action which was later signed into law by the Mayor of Boston on April 4, 2005. *See* Exhibit B to Defendant City of Boston's Reply In Support Of Its Motion To Dismiss ("City's Reply"); *see also* City's Reply at 5. It is obvious that, despite Counsel's representations and despite the repeal and rescission of the most egregious portions of the City's enforcement scheme regarding street performers, the City of Boston continues to engage in unconstitutional enforcement against street performers.

As further represented through affidavits filed with this Court in recent weeks, on Sunday April 3, 2005, four days after the Boston City Council voted to repeal § 16-12.24 and the day before that action was signed into law by the Mayor of Boston, Gary Osbourne, who performs as "Gazzo the Magician", and Daniel Denney, who also performs publicly as a magician, went to perform in Sam Adams Park in Boston. *See* Declaration of Gary Osbourne and Declaration of Daniel Denney, filed as Exhibits A and B to Paper #42. Osbourne arrived at Sam Adams Park around 2:30 pm and began performing. Denney watched Osbourne, with the intention of performing after him. After Osbourne had performed for about 10 minutes for a small crowd of people, a Police Officer named Wayne told Osbourne that he had to have a

---

2 Rule 403 was rescinded on January 3, 2005. *See* Exhibit A to City's Reply.
3 Rule 75 was rescinded on September 30, 2004. *See* City's Reply at 5, n. 2.

3

permit to perform there. Osbourne asked the Police Officer where he could obtain a permit. The Officer told him that he could obtain a permit in Room 811 of Boston City Hall. As the result of this exchange, it was Osbourne's and Denney's understanding that they could not perform, and they therefore did not perform further. *Id*.

The next day, Monday, April 4, 2005, the same day that the Mayor of Boston signed the repeal of § 16-12.24, Osbourne and Denney went to Room 811 of Boston City Hall, as directed by the Police Officer. They asked for permits to perform in Boston. Osbourne and Denney were told by the City workers in Room 811 that they do not issue permits and that Osbourne and Denney should talk to the Boston Department of Public Works. The City workers also told Osbourne and Denney to go to a room directly below for permits in Boston City Hall. *Id*.

Osbourne and Denney then went to the room directly below, which they believe was Room 715, in Boston City Hall and asked for permits to perform in Boston. The City workers in that room told Osbourne and Denney that they do issue permits but that they will not issue street performers permits of any kind for Sam Adams Park or Downtown Crossing or any public thoroughfare in Boston. The City workers said that Osbourne and Denney cold go to Police Headquarters in Roxbury and seek a permit there. They also said that Osbourne and Denney could apply for a Vendor's License, allowing them to set up a space to sell CD's if they wanted to. However, the workers said it would take 2 weeks to get such a license and no such license would be issued for any "tourist area" in downtown Boston. Osbourne and Denney then left Boston City Hall without any permits to perform. *Id*. As magicians, Osbourne and Denney do not have any CD's or other material to sell, and they therefore do not need Vendor's Licenses.

In a further incident, documented in the Declaration of Jason Gardner, attached as Exhibit A hereto, Gardner, a street performer who performs as a magician and escape artist, was encouraged by a Boston Police Officer and an unknown man not to perform in Sam Adams Park on April 2, 2005. As Gardner waited to unpack his bag and begin performing, he began talking to a Boston Police Officer who was

4

working at Sam Adams Park.  Gardner told the Officer that he was waiting to begin performing.  Gardner and the Officer were talking when a man, who Gardner did not know but who seemed to work for Faneuil Hall Marketplace, came up and complained to the Police Officer that Gardner was not allowed to perform in Sam Adams Park.  The Police Officer, a man named Tom, said that technically Gardner could perform there, but it would be better if he went and performed elsewhere.  The unknown man said that if Gardner were performing as a musician the man could not stop Gardner, but since Gardner was not a musician then Gardner could not perform in Sam Adams Park without hiring a City of Boston Police detail and Gardner could not solicit money in any way.  The Officer then said that the Officer was supposed to leave the street performers alone that weekend, and that the Boston Police Department was having a meeting on the following Monday about street performers.  The Officer said Gardner was allowed to perform but that it would be better if he moved somewhere else.  The unknown man then said that a truck was coming to unload equipment in the spot where Gardner was setting up anyway.  Exhibit A at ¶¶ 1-6.

Because of the confusion, and based in part on the Police Officer's recommendation, Gardner decided to move and to perform on Boston Common instead.  Gardner began performing on Boston Common using a small wireless microphone attached to a small portable amplifier.  After Gardner had done two shows with the microphone, a Boston Park Ranger came over to him and told him that he needed a permit if he was going to use any amplification in the park.  The Ranger said Gardner could leave the park, or Gardner could work without the microphone.  Gardner did two more shows without a microphone and then left Boston Common.  *Id*. at ¶ 7.

In December of 2004, Counsel for the City of Boston represented to this Court that Rule 403, Rule 75, and § 16-12.24 were not being enforced by the City and would be (or had been) rescinded and/or repealed.  Counsel to the City of Boston stated "403 itself is not being enforced right now, and the city concedes there are problems with it.  We'll agree in principle with the Plaintiffs on this matter."

Transcript of Preliminary Injunction Hearing held on December 22, 2004 ("Dec. 22 Transcript") at p. 4, ll. 17-20.  Continuing further, Boston's counsel again stated, "It's not being enforced right now." *Id*. at l. 24.

In a further hearing held the next day, on the same matters, Boston's counsel again stated, "the city has decided to repeal the bells and noise making ordinances and with it the Boston Police Rule." Transcript of Preliminary Injunction Hearing held on December 23, 2004 ("Dec. 23 Transcript") at p. 3, ll. 5-7.  Boston's counsel continued, "75 has already been repealed, none of them being enforced, but the city has decided to take the extra step, repeal the ordinance and with it the Boston Police Rule 403." *Id*. at ll. 10-13.  Boston's counsel also stated that Park Rule 6(b) does not apply to Plaintiffs or street musicians generally, *Id*. at pp. 3-4, and that Park Rule 1(b), regarding begging or canvassing for alms, covers a constitutionally protected activity, so it was not being enforced.  *Id*. at p. 8, ll. 9-12.  As to Rule 403 and § 16-12.24, Boston's counsel again stated, "they're not being enforced." *Id*. at p. 4, l. 20.  When asked what street performers can carry with them and what they can do when confronted by the Boston authorities, Boston's counsel again stated, "It's not being enforced, your Honor." *Id*. at p. 6, l. 22.

Despite these representations by the City of Boston, made more than three months ago, unconstitutional enforcement continues in the City.[4]  Even though Counsel to the City asserted that Rule 75, Rule 403, and § 16-12.24 were not being enforced, street performers have been told that they cannot perform and have been given confusing and contradictory instructions from Boston Police and other City workers regarding the need for a permit, the types of permits available, and where such permits can be obtained.  If Rule 75, Rule 403, and § 16-12.24 are not being enforced, and in fact have been rescinded and/or repealed, there should not be ANY permit required to perform in the streets of Boston, as, it is Plaintiffs' understanding, there is no other ordinance or rule requiring such a permit.[5]

---

[4] The City additionally states in Defendant City of Boston's Motion To Dismiss Plaintiff's (sic) Complaint Pursuant to Fed.R.Civ.P. 12(c), with regard to Rule 75 (and presumably Rule 403) and § 16-12.24, that "[n]either regulation is enforced" (at ¶ 3), that "neither regulation was enforced prior to the rescission of the rule and the request to repeal" (at ¶ 7), and, again, that "neither regulation is being enforced" (at ¶ 12).
[5] The City admits as much, stating in its Reply that "there is no longer any regulation of itinerant musicians or artists in the

Nevertheless, Boston Police continue to hassle and harass street performers, disseminating incorrect information about the requirements for performance, and creating an enforcement scheme in which performers are told both that they need a permit to perform, and that there is no permit that applies to them. The City has itself admitted that Rule 75 and § 16-12.24 must be construed as part of "the City's entire regulatory plan concerning street musicians", which the City claims is designed to protect "pedestrians and residents from unreasonable noise levels as well as ensuring the free flow of foot and automotive traffic on the city streets and in the city parks".[6] *See* Defendant City of Boston's Opposition to Plaintiffs' Motion for Preliminary Injunction at 9-10. The rules and ordinance that have been rescinded and repealed are only part of this "regulatory plan concerning street musicians" and it is likely that City authorities will use the remainder of the "regulatory plan" to engage in the same type of unconstitutional enforcement that has taken place in the past. This is why declaratory judgment declaring the rights of the artists is a particularly appropriate remedy is this case, providing clarity for artists and municipal officials regarding the artists' rights and preventing unconstitutional enforcement going forward.

Moreover, not only do individual street performers continue to be actually prevented from performing by this enforcement scheme, this enforcement scheme also causes street performers as a group to be further chilled from exercising their constitutional rights, both now and in the future, in the City of Boston, as they cannot rely on the City's representations that they will be permitted to perform. (*See* Exhibit B hereto, reporting numerous phone calls from artists and performers who have not performed in the City for years as the result of harassment and threats of arrest.) The unconstitutional enforcement undertaken by the City in recent weeks is just the most recent incident in a 30 year history during which the City asserts to performers that they can perform, and then eventually denies them that ability through

---

City of Boston." City's Reply at 5. *Emphasis in original*.
[6] Plaintiffs would welcome a *Constitutional* regulatory plan designed to achieve these goals, as opposed to the enforcement regime currently in place in the City.

unconstitutional enforcement.[7] Street performers have become more and more unwilling to attempt to exercise their rights in Boston, as they cannot rely on the City's statements and risk arrest by testing the state of the enforcement scheme.

II.     **Plaintiffs' Complaint Seeks Declaratory Relief, and Plaintiffs are Entitled to That Relief:**

From the beginning of this lawsuit, Plaintiffs' have sought a declaration of their rights to perform in the City of Boston. In addition to identifying § 16-12.24 and Rule 75 as containing facially unconstitutional language,[8] Plaintiffs' Complaint identifies a general enforcement regime conducted through the "practices and policies of the City of Boston, the Boston Police Department, and the Boston Parks and Recreation Department" under which the Constitutional rights of public performers and artists have been repeatedly violated. Complaint at ¶ 1. As Plaintiffs have pointed out in Plaintiffs' Opposition to Defendant City of Boston's Motion to Dismiss, Plaintiff's [sic] Complaint Pursuant to Fed. R. Civ. P. 12(c) ("Plaintiffs' Opposition") Plaintiffs' Complaint seeks two distinct forms of declaratory relief, one covering § 16-12.24 and Rule 75 specifically, and the other declaring the artists' rights generally.

Despite the plain language of the Plaintiffs' Complaint, the City of Boston attempts in the City's Reply to characterize the Plaintiff's Complaint in this matter as limited only to § 16-12.24 and Rule 75, and to refer only to musicians, rather than to all CAA members, including various types of street performers. This is not the case. Plaintiffs in this matter have repeatedly and continually sought a declaration of their rights, generally, to perform in the City of Boston. Plaintiffs consist of Baird and

---

[7] Baird has been working with the City for 30 years in an attempt to remedy the unconstitutional enforcement scheme in the City of Boston. Over that time, he has repeatedly been assured by the City that he can perform, only to be harassed when he actually attempts to perform. The most recent iteration of this took place last summer, when Plaintiffs were assured by the City that unconstitutional enforcement would not take place, and when, as documented in Plaintiffs' Complaint, Baird was again harassed and told to move along. As both Baird (in the Supplemental Declaration of Stephen H. Baird) and Osbourne note in their declarations, the unconstitutional enforcement has caused them to stop attempting to perform in the City at various times. Based on the representations of the City's Counsel in this lawsuit, they have again attempted to perform, and have again been harassed.

[8] *See* Complaint at ¶¶ 40-45 asserting that the restrictions imposed by § 16-12.24 and Rule 75 are not content neutral, are not narrowly tailored to serve a significant or substantial government interest, do not leave open ample alternative channels for the type of expressive activity that is being restricted, and employ gender classifications that do not serve important governmental objectives. *See also cases cited in* Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction ("P.I. Memo"), Paper #14; Plaintiffs' Reply Memorandum Supporting Their Motion for a Preliminary Injunction ("P.I. Reply Memo"), Paper #22.

8

CAA, an organization comprised of various performers who engage in various forms of artistic expression beyond the playing of music. Moreover, as Plaintiffs have demonstrated through their affidavits, the City's unconstitutional enforcement is not limited to musicians, and instead effects all types of street performers.[9] The remedies sought by Plaintiffs have been designed to address all of these concerns. Plaintiffs' Motion for a Preliminary Injunction (the "P.I. Motion"), filed in September of 2004, specifically seeks a preliminary injunction "enjoining Defendant, City of Boston, its agents, and those in active concert or participation with the City or its agents with notice of this Order, from: (a) enforcing or attempting to enforce Boston Municipal Ordinance § 16-12.24 or Boston Police Rule 75; and (b) interfering in any way with the rights of any performer, including without limitation musicians, singers, actors, magicians, puppeteers, portrait artists, and caricature artists, to play musical instruments, to perform, to display their art, or to solicit peacefully and receive consideration for these activities at any time on any City street, sidewalk, ground, or park, including without limitation The Boston Common, Dock Square, Copley Square, City Hall Plaza, Newbury Street, and Downtown Crossing." P.I. Motion at 1-2. The Proposed Order attached to the P.I. Motion contained exactly this proposed relief, and the Memorandum in Support of the P.I. Motion repeatedly complains about the unconstitutional enforcement scheme in the City, as opposed to simply Rule 75 and § 16-12.24.

The Plaintiffs have sought a declaration of their rights to perform in the City of Boston from the beginning of this case and the City's continued unconstitutional enforcement entitles Plaintiffs to that relief. The Court should deny the City's Motion to Dismiss, should take further evidence, and then should declare § 16-12.24 and Rule 75 unconstitutional, should declare the Plaintiffs' rights to perform and to accept contributions and sell their art in the City of Boston as demanded in the Complaint, should grant

---

[9] Plaintiffs note that, despite the City's claim that there is no unconstitutional enforcement now that Rule 75 and § 16-12.24 have been repealed or rescinded, that rule and ordinance only purported to regulate itinerant musicians. Nevertheless, as demonstrated through Plaintiffs' affidavits, the City has been engaging in unconstitutional enforcement against non-musician street performers without any specific statutory authorization to do so. This is further indication that unconstitutional enforcement can take place in the City, and has taken place in the City, even in the absence of an unconstitutional statute.

injunctive relief consistent with such declaration and should award the Plaintiffs their costs and attorneys' fees in this action.

**III.     Plaintiffs Are, at a Minimum, Entitled to Costs and Attorneys' Fees:**

The City's entire argument for dismissal of this case, and for denying Plaintiffs' claims for attorneys fees, is the City's unsupported assertions that (1) the offending rules and ordinance have not been enforced since December of 2004 or January of 2005 and have now been rescinded/repealed; and (2) that the City voluntarily "decided to cease regulation of itinerant musicians, as it became clear that such regulation was antiquated and unnecessary to protect public health and safety." City's Reply at 10. These assertions are factually inaccurate and cannot be the basis for dismissing this case and denying attorneys fees.

Despite the City's assertions that the above rules have not been enforced in months, the City admits that Baird was approached by not one, but two different law enforcement officers while he was performing in Sam Adams Park on March 30, 2005. The City admits that these officers did not know the status of the law and did not know whether or not Baird was allowed to play there. The City has also offered nothing in opposition to the Declarations of Osbourne and Denney describing unconstitutional enforcement. The City has been unable to make any sort of convincing case that the police rules and ordinance are not being enforced.

In addition, the City asserts that it has voluntarily rescinded the offending police rules and ordinance because they are antiquated and unnecessary, as if such rescissions would have taken place in the absence of this lawsuit. Such an assertion is absurd. Counsel for the City stated at oral argument in December that the City agreed with Plaintiffs with regard to Rule 403. Dec. 22 Transcript at p. 4, ll. 17-20. Counsel additionally stated with regard to Park Rule 1(b) that the Park Rule would not be enforced because it covered constitutionally protected activity. Dec. 23 Transcript at p. 8, ll. 9-12. The City additionally admits as much in its Reply, stating that by December 2004 and January 2005, "Park

10

Commission Rule § 1(b) had already been adjudicated and found unconstitutional." City's Reply at 7. Nevertheless, the City asserts that Plaintiffs have not prevailed, even though the City had not taken any action to repeal or rescind any of its unconstitutional enforcement scheme, including its park rules, its police rules, and its city ordinances, prior to the initiation of this lawsuit by Plaintiffs.

The City cannot, in the face of objection by street performers, maintain unconstitutional ordinances and an unconstitutional enforcement scheme for years, and then avoid culpability for that scheme by "voluntarily" rescinding the offending ordinances as soon as a street performer finally is frustrated enough to bring suit.[10] To deny Plaintiffs their attorneys fees in this action is to create a regime in which the City can systematically frustrate constitutional rights for substantial periods of time with impunity.

As demonstrated in the cases cited by Plaintiffs in Plaintiffs' Opposition to the City's Motion to Dismiss, to the extent that this Court finds that the Plaintiffs' claims should be dismissed because the City has rescinded the offending rules and ordinances, the Court should consider the Plaintiffs to have prevailed on their claims against the City and should award Plaintiffs costs and attorneys fees.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Plaintiffs,<br>**COMMUNITY ARTS ADVOCATES, INC. and STEPHEN H. BAIRD,**<br>By their attorneys, |
|  | /s/ Christine M. Griffin<br>Jerry Cohen, BBO #089400<br>Stephen Y. Chow, BBO #082990<br>Christine M. Griffin, BBO #651401<br>PERKINS SMITH & COHEN LLP<br>One Beacon Street, 30th Floor<br>Boston, Massachusetts 02108 |
| April 25, 2005 | (617) 854-4000 |

---

[10] Plaintiffs note that obtaining counsel and filing this lawsuit was a substantial and difficult undertaking for Plaintiffs. To allow the City to force citizens to go through this process in order to be able to exercise their constitutional rights creates a substantial bar to citizens who legitimately seek to engage in protected constitutional conduct. To allow this action to be dismissed without attorneys fees creates no incentive for the City to ever change or rescind an unconstitutional provision until the City is forced to by a Plaintiff who has the resources available to actually file suit.

11

## CERTIFICATE OF SERVICE

      I, Christine M. Griffin, hereby certify that a true copy of the foregoing was served upon the following counsel by first-class mail, postage prepaid, on this the 25th day of April, 2005:

| | |
|---|---|
| Thomas R. Donohue, Esq. | Ronald G. Nelson, Esq. |
| City of Boston Law Department | City of Boston Law Department |
| City Hall, Room 615 | City Hall, Room 615 |
| Boston, MA 02201 | Boston, MA 02201 |

                                                      /s/ Christine M. Griffin
                                                    Christine M. Griffin