UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
COMMUNITY ARTS ADVOCATES, INC.,            )
and STEPHEN H. BAIRD,                      )
        Plaintiffs                            )
                                               )
v.                                         )
                                               )
CITY OF BOSTON, BOSTON POLICE              )
DEPARTMENT, KATHLEEN M. O'TOOLE,           )    **Civil Action No. 04 11618 NG**
individually and, in her capacity as Police)
Commissioner, BOSTON PARKS AND             )
RECREATION DEPARTMENT, ANTONIA             )
POLLACK, individually and, in her capacity as )
Parks and Recreation Department Commissioner, )
DOWNTOWN CROSSING MERCHANTS'               )
ASSOCIATION, ANNE MEYERS, individually     )
and, in her capacity as President of the Downtown )
Crossing Merchants' Association, BERNARD   )
O'ROURKE, individually and in his capacity as )
Commander of the Boston Police District A-1, )
REGGIE SAMPSON, individually and in his    )
capacity as Boston Park Ranger, John Doe 1 )
 a/k/a Park Ranger call number 217,  and John )
Doe 2 a/k/a Boston Police Officer Wayne,   )
        Defendants                            )
_____ )

**AMENDED COMPLAINT**

    1.    Pursuant to Fed. R. Civ. P. 15, Plaintiffs respectfully submit this Amended Complaint to amend and supplement the previously filed complaint and its prior amendment.  This is a civil action in which Plaintiffs, Community Arts Advocates, Inc. and Stephen H. Baird, seek to defend the rights of public place musical and visual arts performers (hereinafter "street artists" or "street performers") in the city of Boston.  More specifically, Plaintiffs challenge the continuing persistent enforcement of the substance of Boston Municipal Ordinance § 16-12.24 and Boston Police Rules 75 and 403, although they were all repealed by March 2005 and challenge abusive use of other not repealed ordinances, and rules and practices that effect a regression to the substance of Boston

Municipal Ordinance § 16-12.24 and Boston Police Rules 75 and 403, the repealed ordinances and rules, as well as effecting other violations of rights of free expression under color of law.

2. The present enforcement of ordinances and rules that no longer exist or are said to be dead letters or otherwise said to be not enforced, but enforced in fact, result in the unlawful prohibition of public artistic expression and violate Plaintiffs' rights under the First and Fourteenth Amendments of the Constitution of the United States and under the Constitution of the Commonwealth of Massachusetts.

3. Plaintiffs seek declaratory relief -- a declaration that Plaintiffs and others similarly situated have the rights to play musical instruments, to perform, to display and offer works of art, and to solicit peacefully and receive voluntary contributions for these activities in the public streets, sidewalks, grounds and parks of the City of Boston and they seek injunctive relief consistent with such declaration, as well as costs and attorneys fees.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First and Fourteenth Amendments to the United States Constitution, the Constitution of the Commonwealth of Massachusetts, and M.G.L. ch. 12, §§ 11H and 11I. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343 and 1367. Venue is proper in this Court by 28 U.S.C. §§ 1391(b) and (e) because the Defendants are located in the District of Massachusetts and the causes of action arose in this District.

## THE PLAINTIFFS

5. Plaintiff Community Arts Advocates, Inc. ("CAA") is a non-profit Massachusetts corporation dedicated to expanding public awareness, participation in and support of the arts through performances and festivals, exhibits and workshops, publicity, educational forums, non-profit arts management consultation services, and collaborative projects. CAA has more than 30 members and has a place of business in Jamaica Plain, Massachusetts. CAA members include musicians, singers,

actors, magicians, puppeteers, portrait artists, and caricature artists, among others. CAA has capacity to sue for violation of the Constitutional rights of its members pursuant to Federal Rule of Civil Procedure 17(b).

6.  Plaintiff, Stephen H. Baird, is a citizen of the United States and a resident of the Jamaica Plain neighborhood, Boston, Massachusetts. Mr. Baird is the Executive Director of CAA, a musician and performer with over three decades of performance experience. Mr. Baird has performed in the United States and internationally, including at the Kennedy Performing Arts Center, New England Artists Showcases, and over five hundred college campuses, libraries, schools, camps, television programs, festivals concerts, and theaters as well as innumerable performances in public streets and parks in many cities, including Boston. Mr. Baird and his performances have been featured in such publications as Time, Newsweek, People, the Boston Globe, the Chicago Tribune, the New York Times, and the American Bar Association Journal. Mr. Baird and his performances have been also featured in a Public Broadcasting Service documentary ("Street Singer") and a Discovery Channel documentary ("Millennium Music Series"). He and CAA have been activists on behalf of the CAA constituency and achieved or helped others to achieve reform of laws and practices affecting street performers in several American cities leading to greater respect for rights of free expression of street artists. The cities include Cambridge, Massachusetts; St. Louis, Missouri; Boulder, Colorado; Hartford, Connecticut; Worcester, Massachusetts; Chicago, Illinois; New York City; and Alexandria, Virginia. Other supporters of artists' rights have achieved similar results in Toledo, Ohio; Seattle, Washington; Eugene, Oregon; San Francisco, California; Los Angeles, California; New Orleans, Louisiana; and other cities and towns in the U.S. and abroad. Mr. Baird and CAA have provided important information resources and coordination through their CAA website continuous updates and other means, to enhance respect for constitutional rights of free expression of street artists.

## THE DEFENDANTS

7. Defendant City of Boston is a body politic and corporate entity, existing under the laws of the Commonwealth of Massachusetts and located in Suffolk County, Massachusetts. The City of Boston is incorporated and organized under Massachusetts General Laws chapters 39 and 40, and Article II of the Constitution of the Commonwealth of Massachusetts.

8. Defendant Boston Police Department is an agency of the City of Boston, acting under the City's direction and control and under color of state law.

9. Defendant Kathleen M. O'Toole is the Police Commissioner of the Boston Police Department.

10. Defendant Boston Parks and Recreation Department is an agency of the City of Boston, acting under the City's direction and control and under color of state law.

11. Defendant Antonia Pollack is the Commissioner of the Boston Parks and Recreation Department, is responsible for all actions taken by Boston Park Rangers.

12. Defendant Downtown Crossing Merchants' Association is an unincorporated association that can sue and can be sued.

13. Defendant Anne Meyer is the President of the Downtown Crossing Merchants' Association.

14. Defendant Captain Bernard O'Rourke is the Captain of the Boston Police District A-1, located at 40 New Sudbury Street, Boston, MA.

15. Defendant Reggie Sampson is a Boston Park Ranger, often working in the Boston Common.

16. Defendant John Doe 1, a/k/a Park Ranger #217 is a ranger working for the Boston Parks & Recreation Department exercising police powers.

17. Defendant John Doe 2 a/k/a "Wayne" is a Boston police officer.

**GENERAL ALLEGATIONS**

18. The First and Fourteenth Amendments to the United States Constitution impose significant limits on the government's ability to regulate expressive activities. Live entertainment, including music, dance, visual art and other street performances, is constitutionally protected. Any restrictions imposed on any such expressive activities must be content neutral, narrowly tailored to serve a significant or substantial government interest, and leave open ample alternative channels for the type of expressive activity that is being restricted.

**RECENTLY REPEALED LAWS AND REGULATIONS**

19. At the time of the original complaint, Plaintiffs challenged Boston Municipal Ordinance § 16-12.24 and Boston Police Rule 75. During the course of this suit and in direct response to the challenge Boston Police Rule 75 was replaced by Boston Police Rule 403. Rule 403 was also challenged in this action and repealed in direct response to such additional challenge.

20. Boston Municipal Ordinance § 16-12.24 states:

"No person, other than musicians in a lawful parade or procession or itinerant musicians licensed thereto by the Police Commissioner shall, in any street, except as a warning of danger, ring or cause to be rung any bell, or use or cause to be used any musical or noisemaking instrument."

21. The particular sections of Boston Police Rules 75 and 403 and Park Rule 1 (b) and 6 challenged by the Plaintiffs were:

Rule 75

Section 1: Except as hereinafter provide no person shall play on a musical instrument in a street unless licensed to do so b the police commissioner.

Section 4: The police commissioner may grant licenses to play on musical instruments in the streets to suitable persons more than twenty-one years of age whose usual or principal occupation is that of an itinerant musician.

Section 6: No licensed itinerant musician, except on a license granted under section 3, shall play on a musical instrument in any public street on Sunday; no within five hundred feet of any school house; nor within three hundred feet of any other building after he has been notified to desist by a police officer or an occupant of such building; nor in a public street in any part of the city between 9 P.M. and 9 A.M.; nor at any time except between 6 P.M. and 9 P.M. in the territory, including the boundary streets or parts of streets, inclosed [sic] as follows: Beginning in Bay State

road at the intersection of University road, thence through Bay State road, Beacon, Somerset, Howard streets, Scollay square, Sudbury, Portland, Causeway, Commercial Streets, Atlantic avenue, Kneeland, Washington, Hollis, Tremont, Stuart, and Eliot streets, Park square, Columbus avenue, Dartmouth street, Huntington avenue, Hemenway, Boylston streets, Brookline, Commonwealth avenues, University road to point of beginning.

Section 8:   A female licensed itinerant musician shall not play on a musical instrument in a street unless she is accompanied by an adult male licensed itinerant musician.

Section 11:   He shall not carry and shall not display upon his instrument any advertisement or any special appeal for money, nor shall he go about with his instrument in the company of any person carrying such advertisement or presenting such appeal.

Rule 403: Regulations Regarding Itinerant Musicians:

>Section 2: The Police Commissioner may grant licenses to play musical instruments on the streets, pursuant to law.

## CURRENT LAWS AND REGULATIONS

23.   The following sections of the Boston Municipal Ordinance and City of Boston Park Rules may be applied in an unconstitutional manner to deprive Plaintiffs' of their Artists' Rights:

(a)   § 7-4.4         Control of Portions of Post Office, Dock and Faneuil Hall Squares;

(b)   § 7-4.6         Music;

(c)   § 16.2.2        Crying of Wares;

(d)   § 16-10.2       Obstruction to Travel;

(e)   § 16-10.4       Disorderly Conduct;

(f)   §16-10.5        Compliance with Directions;

(g)   § 16-12.2       Loitering;

(h)   §16-12.15       Throwing or Shooting on Streets;

(i)   § 16-12.27      Abusive Language; Soliciting in Streets;

(j)   § 16-18.1       Use of Sidewalks;

(k)   § 16-19.1       Use of Public Grounds;

(l)   § 16-19.2       Public Addresses, Vending, etc.

(m)   §16-19.3        Permit for Use of Park Land for Demonstrations;

6

  (n) § 16-19.4  Profanity and Other Offenses;

  (o) § 16-26.1  Unreasonable Noise; General Prohibition and Definitions;

  (p) § 16-26-2  Disturbing the Peace;

  (q) § 16-26.8  Prohibitions Against Loud Amplification Devices in Public Ways or Places

  (r) § 16-26.10  Enforcement;

  (s) § 16-41.1  Prohibiting Aggressive Solicitations; and

  (t) § 16.41.2  Prohibited Acts.

  (u)  Park Rule 1(b)

  (v)  Park Rule 6

24. For Example, Boston Municipal Ordinance § 16.10.2, Obstruction to Travel, as written could be used and on information and belief has been used selectively to bar artists from exercising their constitutionally protected right to perform in public streets and parks, the ordinance states in part:

> "No person shall, within any market limits, so occupy or obstruct any sidewalk as not to leave a clear and direct passage for travelers thereon."

25. As another example, Boston Municipal Ordinance § 16-10.4, Disorderly Conduct, as written could be used and on information and belief has been used selectively to bar artists from exercising their constitutionally protected right to perform in public streets and parks. It states:

> "No person shall, within any market limits, play any game, lie down, sleep, or behave in a noisy, disorderly, or riotous manner, or scuffle, or throw any missile or thing whatsoever."

26. As another example, Boston Municipal Ordinance § 16-12.2, Loitering, as written could be used and on information and belief has been used selectively to bar artists from exercising their constitutionally protected right to perform in public streets and parks, states in part:

7

> "No person shall saunter or loiter in a street in such a manner as to obstruct or endanger travelers or in a manner likely to cause of breach of the peace or incite to riot…"

27. As another example, Boston Municipal Ordinance §16-2.2, Crying of Wares, as written could be used and on information and belief has been used selectively to bar artists from exercising their constitutionally protected right to sell compact discs or other original artwork, states in part:

> "No person hawking or peddling, selling, or exposing for sale any articles, shall cry his wares to the disturbance of the peace and comfort of the City.."

28. As another example, Boston Municipal Ordinance § 16-19.1, Use of Public Grounds, as written could be used and on information and belief has been used selectively to be used and on information and belief has been used selectively to bar artists from exercising their constitutionally protected right to perform in public parks, states in part:

> "No person shall, in or upon the Common, Public Garden, or other public grounds of the City, walk, stand, or sit upon the grass."

29. As another example, Boston Municipal Ordinance § 16-19.2, Public Addresses, Vending, Etc., as written could be used and on information and belief has been used selectively to bar artists from exercising their constitutionally protected right to amplify their performance in public streets and parts, states in part:

> "No person shall, in any of the public grounds, use any device intended to amplify or broadcast sound using a megaphone, loud speaker, or any other amplification device…"

30. In addition to Boston Municipal Ordinances that are unconstitutional, various sections of Boston Park Rules are unconstitutional. For instant, section 1 states,

> "[n]o person shall, in any public park… or other public place under the control of the Parks and Recreation Commission… (b) beg or canvas for alms…."

Nine months after counsel for the City of Boston acknowledged in open court that this particular section of the Park Rules would not be enforced, it is still on the books, free to be enforced by any Park Ranger and has been enforced against street performers.

8

Further, section 6 of the Park Rules states,

> "[n]o person shall, in any public park…unless a written permit be on their person or prominently displayed, engage in any commercial enterprise or solicit business or display or distribute any commercial enterprise advertising matter…."

Park Rule 6 is overbroad and not narrowly tailored to serve a significant or substantial government interest. Park Rule 1 and 6, both facially and as applied, does create a hostile atmosphere for street artists exercising their First Amendment Rights.

31. At the time of the original complaint, street performers had long experienced harassment by defendants and/or their predecessors in office and prevention of protected activities of performance in public spaces by such defendants and predecessors under color of Boston Municipal Ordinance 16-12.24 and other Boston Municipal Ordinances cited above and Boston Police Rule 25 and Park Rules 1(b) and 6.

32. As an example illustrative of the prevalent patterns and practices of defendants, on July 18, 2004, Stephen H. Baird was entertaining a group of passersby on the Boston Common by playing an acoustic guitar and singing a ballad. A Boston Parks Department Ranger (Defendant John Doe 1) told Mr. Baird that he was not allowed to perform music in the Boston Common, even though Mr. Baird had an Itinerant Musician License from the Boston Police Department pursuant to then extant Municipal Ordinance 16-12.24. The Ranger, identified by his call number, 217, stated that a permit was required from the Parks Department and that Mr. Baird must move off of the path and onto the grass. The Ranger called a Mounted Ranger to the scene and repeated his demand that Mr. Baird Move.

33. As another recent example, on June 19, 2004, Stephen H. Baird was entertaining a group of passersby on the Boston Common using a First Century precursor to the piano called the hammered dulcimer. A Boston Parks Department Ranger (again, Defendant John Doe 1) then told Mr. Baird that he was not allowed to perform music in the Boston Common, even though Mr. Baird presented his Itinerant Musician License to the Ranger. The Ranger initially stated that a permit was

9

required from the Parks Department but later stated that the Parks Department will not issue permits for performers.  The Ranger refused to identify himself but eventually provided his call number, 217.  Mr. Baird then moved from the location where he first encountered the Ranger and managed to continue his performance at another location on the Common.

34.   As another example of unconstitutional enforcement, in or about June 2003, Larry Meyerhoff, a CAA member and musician who performs traditional Irish music on instruments such as the hammered dulcimer, was told by an officer of Boston Police Department that he was not allowed to perform in Dock Square and the area surrounding Faneuil Hall, even though Mr. Meyerhoff had an Itinerant Musician License from the Boston Police Department and presented the Itinerant Musician License to the officer.  Mr. Meyerhoff has since left the City of Boston to pursue his interests in New York.

35.   As another example, in or about August 2003, Rosanna Lee Cohen, a CAA member, singer and guitar player known by the name Rosanne Lee, was repeatedly asked by officers of Boston Police Department to stop her performances on Newbury Street, even though Ms. Lee had an Itinerant Musician License from the Boston Police Department and presented the Itinerant Musician License when confronted by the officers.  Ms. Lee has since left the City of Boston to pursue her career in Southern California.

36.   Boston Municipal Ordinance § 16-26.1 states that:

> "No person shall make or cause to be made any unreasonable or excessive noise in the City, by whatever means or from whatever source…(b) *Loud amplification device or similar equipment* shall mean a radio, television, phonograph, stereo, record player, tape player, cassette player, compact disc player, loud speaker, or sound amplifier which is operated in such a manner that it creates unreasonable or excessive noise. (c) *Unreasonable or excessive noise* shall mean (1) Noise measured in excess of 50 dBa between the hours of 11:00p.m. and 7:00a.m., or in excess of 70 dBa at all other hours. (emphasis in the text of the Ordinance)."

As shown herein in this Amended Complaint this noise ordinance has been misused to apply the facially unconstitutional and now repealed Boston Municipal ordinance § 16-12.24 and Police

10

Rules 75 and 403.  Other ordinances and rules that are or may be invoked to continue unconstitutional practice include. Those set forth above.

## THIS LITIGATION

37.    The original complaint in the action was filed in July, 2004.  On or about December 22 and 23 2004, a hearing was held in U.S. District Court, where counsel for the City of Boston represented that both Boston Police Rule 75 and a short lived replacement rule, namely 403, were repealed and that the City of Boston Municipal Ordinance § 16-12.24 was not being enforced and was due to be repealed.

38.    At the end of March, 2005, the City of Boston repealed Boston Municipal Ordinance § 16-12.24, but did not admit that the ordinance was unconstitutional, facially or as applied, instead spinning the import of the repeal action as removal of an "antiquated" ordinance.  No replacement ordinance of proper time, place and manner of street artists' performance was ever proposed or passed thereafter by the City of Boston.  The repeal of §16-12.24 ended the requirement for street performers to obtain municipal licenses.  But the repeal was accompanied by no admission of unconstitutionality and no assurance against re-enactment and/or renewed enforcement, formally or in practice.  The interference with free expression rights of street artists is capable of repetition yet evading review.

39.    At the June 2005 and September 2005 status conferences, held at U.S. District Court, counsel for the City of Boston suggested that the present case was now moot, due to such repeals.  Plaintiffs disputed that assertion of mootness at the conferences, asserting continuing patterns and practices of interference with protected rights, and the court gave plaintiffs leave to file an amended complaint by October 6, 2005.

**CONTINUING HARRASSMENT OF STREET ARTISTS**

40. Although the Boston Municipal Ordinance § 16-12.24 and Boston Police Rules 75 and 403 were repealed by March 2005, both Boston Police and the Parks Department continue to attempt to enforce the substance of these ordinances and rules and so far unrepealed other rules cited above. Further, Defendant Downtown Crossing Merchants' Association and Defendant Meyers have assumed police authority in enforcing some permitting and vendor license scheme, in conjunction with the City of Boston Police Department and Defendants O'Toole and O'Rourke.

41. Finally, the Defendant, Downtown Crossing Merchants' Association, under the leadership of Defendant Anne Meyers, has asserted wrongfully to street performers that they need to get a vendor's permit, as well as complained about an alleged level of "noise," to Boston Police, if a performer does not have a vendor's permit issued by the association. There has been no evidence of any instrumental or other valid measurement of decibels to correspond to a proper complaint of noise in violation of ordinance §16-26.1.

42. As one recent example illustrative of a continuing pattern and practice of enforcement of unconstitutional repealed ordinance and rules, on or about July 20, 2005, Darrell Keighley was performing on the streets of Boston and a uniformed officer told him he could not play an instrument with an amplifier. In addition, on or about September 1, 2005, while entertaining at Downtown Crossing, Mr. Keighley was approached by two uniformed police officers that told him he needed a permit and to go to City Hall to get one. They also informed Mr. Keighley that the Captain of the A-1 precinct (Defendant O'Rourke) ordered police officers to shut down all musicians that did not have permits. After going to the Ruggles Street Police Headquarters, City Hall and the A-1 Precinct, Mr. Keighley was informed that he needed both a permit from the Downtown Crossing Merchants' Association and an entertainment permit. Both assertions are contrary to fact and law.

43. On or about July 10, 2005, Lisa Housman and David Falk were performing in the Boston Commons, when approached by a park officer who requested to see their amplifier permit.

They were allowed to finish out their day, but were told they should not return without the correct permit. There is no amplification permit process. When Ms. Housman and Mr. Falk followed up with the Parks Department, they were instructed to download a permit from the internet. When they attempted to do this, the only permit they found was entitled "Application Form for a one-time Entertainment License," hardly appropriate for street performers. There is no basis in law for such a permit.

    44. A third recent episode took place on or around June 25, 2005, when Jeff Kesses attempted to set up to draw publicly in the City of Boston. Defendant Police Officer Reggie Sampson informed Mr. Kesses that he had to have a vendor's permit. That statement was contrary to fact and law. On June 20, 2005 Mr. Kesses contacted the Boston Parks Department who passed him to the Park Department Offices. On June 23, 2005, Mr. Kesses went to the Park Rangers' offices, where he was told that they did not know if Mr. Kesses needed a permit and Mr. Kesses was referred to a Jack Hurley at the Boys & Girls Club of Boston in Boston. After being told that he was lucky not to have been prosecuted for selling goods without a license, Mr. Hurley then informed Mr. Kesses that he would have to pay $250 a month in "rent" in order to get a permit to sell his art. This was not correct as applied to street artists who are not vendors subject to such a permitting scheme, whether instituted by defendant City of Boston or delegated to a private organization such as the Boys and Girls Club. On information and belief, Defendants, City of Boston and O'Toole, have not given any First Amendment instruction to the Boys and Girls Clubs but enforce an unconstitutional permitting scheme conducted in absence of such instruction. On June 25, 2005 Mr. Kesses set up again to draw and sell artwork on the sidewalk of Boston City Hall, but was approached by a security guard who told him he needed a permit. He promptly packed up his belongings and is looking for further guidance before attempting to draw and sell his artwork again. All of these prohibitory actions were and are without basis in any proper constitutional rule or ordinance.

45.    Another recent example involved Jason Gardner.  On or about April 2, 2005, Mr. Gardner, a street performing magician, experienced confusion between the City of Boston Police and an individual who appeared to be part of Faneuil Hall Marketplace.  The police officer said that Mr. Gardner was allowed to perform at Sam Adams Park but this other individual essentially blocked all access to where Mr. Gardner was attempting to perform.  The police officer failed to prevent this and suggested that Mr. Gardner perform elsewhere.

46.    Further, other members of plaintiff CCA have experienced harassment.  One such incident took place on or about June 24, 2005, when Bobby Bishop, a musician attempting to perform in the Boston Common using amplification, was told by a park ranger he could not perform using amplification but that he could continue that "if he kept it low."  The officer made no measurement or other valid assessment of noise level.  On information and belief Mr. Bishop's volume was within limits of applicable ordinances at all times, before and after he was approached.

47.    Amplification is not merely volume enhancement.  It is a method of shaping music.  It is an unique artistic medium.  The Defendants' actions against all electronic amplification ignore these facts and chill this area of free expression of Plaintiffs and others similarly situated.

## NEED FOR RELIEF

48.    Despite the efforts of plaintiffs, Mr. Baird and CAA members, and despite the repeal of Police Rules 75 and 403, and Boston Municipal Ordinance § 16-12.24, all the defendants including, but not limited to, the City of Boston and the Downtown Crossing Merchants' Association, are still acting under color of law unlawfully prohibit public artistic expression in violation of rights of Plaintiff Baird, members of Plaintiff CCA, and others similarly situated under the First and Fourteenth Amendments to the Constitution of the United States and under the Constitution of the Commonwealth of Massachusetts.  Unless the rights of street artists are declared and Defendants prohibited from such practices, Plaintiffs will continue to be deprived of their constitutional rights of expression.  Exercise of such rights has chilled before and after repeal of Boston Municipal

Ordinance § 16-12.24 and Police Rules 75 and 403.  Free expression can exist and does exist within reasonable time, place and manner restraints in the cities cited in par. 6 above but not in Boston. Street artists have been afraid to perform there because of the above described practices of Defendants.

## COUNT I

### Violation of Constitutional Rights - Electronic Amplifiers

49. Plaintiffs repeat and reallege the allegation of paragraphs 1 through 48 above, as though fully set forth in this Count.

50. The existing ordinances and rules do not and cannot, consistent with constitutional limits, provide an *ipso facto* ban on electronic amplifiers usage by street performers when the amplified or otherwise electronically shaped sound is within neutral volume limits.

51. Plaintiffs and others similarly situated have suffered and will continue to suffer harm as a result of the unconstitutional actions of defendants as described in part in this Complaint.

## COUNT II

### Violation of Constitutional Rights - Unlawful Exercise of Delegated Police Power

52. Plaintiffs repeat and reallege the allegation of paragraphs 1 through 48 above, as though fully set forth in this Count.

53. Delegation of police power by defendant City of Boston to Defendants Downtown Crossing Merchants' Association and Ms. Meyers and to the Boys & Girls Club has been done without care for constitutional limits.

54. The existing ordinance and rules do not and cannot, consistent with constitutional limits, provide a basis for arbitrary bans on street performers' activities or allow delegated police powers to private persons and entities in ways that restrict free expression rights of musical, visual and other street performers in public streets and in other public places.

55.   Plaintiffs and others similarly situated have suffered and will continue to suffer harm as a result of the unconstitutional actions of defendants as described in part in this Complaint.

### COUNT III

### Violation of Constitutional Rights - Park Rules

56.   Plaintiffs repeat and reallege the allegation of paragraphs 1 through 48 above, as though fully set forth in this Count.

57.   Park rules 1 and 6, facially and as applied to street artists in practice, are unconstitutional.

58.   Plaintiffs and others similarly situated have suffered and will continue to suffer harm as a result of the unconstitutional actions of defendants as described in part in this Complaint.

### COUNT IV

### Violation of Constitutional Rights - Other Rules and Ordinances and Practices

59.   Plaintiffs repeat and reallege the allegation of paragraphs 1 through 48 above, as though fully set forth in this Count.

60.   The other existing ordinance and rules cited above do not and cannot, consistent with constitutional limits, provide a ban on street performers and delegated police powers affect on musical, visual and other street performers.  The practices of Defendants herein described have implemented those aspects of rules and ordinances formally repealed or not, which are unconstitutional.

61.   Plaintiffs and others similarly situated have suffered and will continue to suffer harm as a result of the unconstitutional actions of defendants as described in part in this Complaint.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

1. Enter a declaratory judgment that Plaintiffs, and those similarly situated, have the rights to play musical instruments, to perform, display and offer works of art, and to solicit peacefully and receive voluntary contributions for these activities in the public streets, sidewalks, grounds and parks of the City of Boston including without limitation the Downtown Crossing intersecting streets, Boston Common, the Public Garden, Jamaica Pond, Fenway and Samuel Adams and Esplanade parklands and other streets, plazas, squares and parks, including, without limitation, (a) statement of a right of performers to use electronic amplifier equipment, subject to compliance with reasonable volume limitations imposed by ordinance or rule, (b) statement that private parties exercising delegated police power must respect constitutional rights of street performers no less than public authorities; (c) that Park Rules 1 and 6 are unconstitutional; and (d) that all ordinances and rules must be applied consistently with free expression rights subject to reasonable time, place and manner restraints.

2. Enjoin Defendants on a preliminary and permanent basis from violating Plaintiffs' and others rights to play musical instruments, to perform, to display and offer works of art, and to solicit peacefully and receive consideration for these activities in the public streets, sidewalks, grounds and parks of the City of Boston.

3. Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988, Mass. Gen. Laws ch. 12, §§ 11H and 11I, and any other applicable authority.

4. Grant Plaintiffs such further relief as the Court deems just and proper.

        Respectfully submitted,

        COMMUNITY ARTS ADVOCATES, INC.
        and STEPHEN H. BAIRD, Plaintiffs

        By their attorneys,

        /s/ Michael P. Twohig
        Jerry Cohen (BBO #089400)
        Barbara Green Whitbeck (BBO #634343)
        Stephen Y. Chow (#082990)
        Michael P. Twohig (#648079)
        Perkins, Smith & Cohen, LLP
        One Beacon Street, 30th Fl.
        Boston, MA  02108
        (617) 854-4000

Dated: October 6, 2005


## CERTIFICATE OF SERVICE

I, Michael P. Twohig, hereby certify that a true copy of the foregoing was served upon the following counsel by the Court's electronic filing system and first-class mail, postage prepaid, on this the 6th day of October, 2005:

Thomas R. Donohue, Esq.
City of Boston Law Department
One City Hall
Boston, MA 02110

        /s/ Michael P. Twohig
        Michael P. Twohig