UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMUNITY ARTS ADVOCATES, INC. )<br>and STEPHEN H. BAIRD, )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF BOSTON, et al. )<br>    Defendants. )<br>) | CIVIL ACTION NO. 04-11618-NG |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR HEARING**

The Plaintiffs, Community Arts Advocates Inc. and Stephen H. Baird, submit this memorandum in opposition to the Motion to Dismiss filed by the Defendant, City of Boston, and not joined by any of the other defendants.

**Introduction**

The City of Boston Motion to Dismiss should be denied. It is an inappropriate statement of factual matters that have to be decided at trial or at best via Rule 56 summary judgment standards and procedures. It misstates the parties involved in Plaintiffs' Amended Complaint. It also misstates the grave situation of performance artists who are still chilled in their exercise of First Amendment Rights.

Rule 12(b)(6) allows presentation by way of a motion of the defense of failure of a specified count or counts of a civil complaint to state a claim upon which relief can be granted, without waiving a right to present any defense when the motion is denied. The motion may not go beyond the complaint tested by the motion unless the court exercises a limited discretion to consider extraneous matters directly or by improvised application of summary judgment standards and process. Plaintiffs submit that the better practice, under present circumstances,

1

would be to deny the City of Boston present motion. The City and/or one or more of the other defendants can bring motions for summary judgment as to one or more counts if there is any basis to do so following the practice of Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Rule 12(b)(6), a successor to demurrer practice, and the underlying substantive rules applicable to a civil rights claim do not support dismissal of any count unless no facts stated in the complaint nor facts inferable therefrom add up to a claim upon which relief can be granted. All facts stated are taken as true and doubts resolved in favor of the complaint.

Applying this standard, it is clear that Plaintiffs have properly stated claims under all counts of their Complaint and the instant motion should be denied.

### Procedural Travel of this Case

The action was filed July 20, 2004 (Complaint; Docket entry 1) alleging civil rights violations through persistent harassment of plaintiffs and other similarly situated street performers by defendants City of Boston, its Police Commissioner, its Parks and Recreation department and the latter department's commissioner, through enforcement of facially unconstitutional Boston Municipal that Ordinance §16-12.24 and Police Rule 75 (later withdrawn and substituted by Rule 403, which in turn was later withdrawn) and other ordinances and rules. The relief sought was and is: (1) declaratory judgment that plaintiffs and others have the right to play musical instruments, to perform, to display and offer works of art and to solicit peacefully and receive consideration for these activities in public spaces and that ordinance 16-12.24 and Rule 75 are unconstitutional and (2) related injunctive relief. The City of Boston moved to dismiss as to all defendants but itself because the City is responsible for their actions (Docket entry 7). Plaintiffs stipulated to dismiss them without prejudice (Docket entries 10, 11,

12). Plaintiffs moved for a preliminary injunction (Docket entry 13). The motion was denied December 23, 2004 (unnumbered Docket entry) the Court stating:

> "Preliminary Injunction is denied at this time because of representations made by counsel for the defendant to wit that the following ordinances and/or rules will be repealed and that pending repeal, they will not be enforced by the defendant: 1) Rule 16-12.24 (Boston Municipal Ordinance), Boston Police Rule 75, Boston Police Rule 403, 2) that section 1(b) of the Rules of the Boston Parks and Recreation Commission prohibiting begging or canvassing for alms is unconstitutional and will not be enforced, and that section 6 of the Rules of the Boston Parks and Recreation Commission does not apply to the activities of the plaintiffs herein."

Defendant City of Boston then moved to dismiss (Docket entry 33) alleging mootness, and the assertions of mootness were countered by Plaintiffs, including affidavit evidence (Docket entries 33, 38, 39, 40, 41, 42, 43, 44, 48). No ruling was made, but in a lobby conference (summarized at Docket entry of 9/15/05) Plaintiffs were given until October 6, 2005 to file an amended complaint (Docket entry 49), understanding that City of Boston agencies and personnel would be added or re-added as defendants in the amended complaint. Defendant's counsel agreed, while exiting the conference, to accept service for city defendants but did not so agree as to private parties who might be defendants. The Amended Complaint was timely filed (Docket entry 49) and the present Rule 12(b)(6) motion was filed 10/27/05 (Docket entry 50) only in behalf of the City of Boston and not in behalf of any of the other defendants.[1]

Along the way there were comings and goings of attorneys, abortive attempts to set up mediated and unmediated negotiations and, with due respect, the City of Boston in fact

---

[1] BOSTON POLICE DEPARTMENT, KATHLEEN M. O'TOOLE, individually and, in her capacity as Police Commissioner, BOSTON PARKS AND RECREATION DEPARTMENT, ANTONIA POLLACK, individually and, in her capacity as Parks and Recreation Department Commissioner, DOWNTOWN CROSSING MERCHANTS' ASSOCIATION, ANNE MEYERS, individually and, in her capacity as President of the Downtown Crossing Merchants' Association, BERNARD O'ROURKE, individually and in his capacity as Commander of the Boston Police District A-1, REGGIE SAMPSON, individually and in his capacity as Boston Park Ranger, John Doe 1 a/k/a Park Ranger call number 217, and John Doe 2 a/k/a Boston Police Officer Wayne.

3

stonewalled against meeting to work things out after the June and September lobby conferences.[2]

A motion to intervene was considered, objected to by plaintiffs and City of Boston and denied on 2/10/05 (nos. 27, 28, 26).

### Argument

Each of Counts I - IV states a cause of action with supporting fact allegations. The assertions of fact of the City of Boston motion to dismiss are appropriate for resolution at trial or at best under Fed. R. Civ. P. 56 and Local Rule 56.1 procedures but not in a motion to dismiss.

### Count I

This count, at pars. 49-51, incorporating allegations of pars. 1-48, of the Amended Complaint alleges that defendants have imposed a ban in practice under misapplied rules and ordinances and *ad hoc* without reference to such rules and ordinances against electronic amplification usage by street performers. The issue of amplification has been considered at the Court of Appeals for the First Circuit. In Casey v. City of Newport, R.I., 308 F. 3d 106 (1st Cir. 2003) a divided panel addressed it as follows. Judge Lipez said the defendant city's restriction of electronic amplification was overbroad, i.e. the district court's conclusion against overbreadth was not supported by the record recognizing that amplifiers are used to create new messages. Id. 117-119. District Court Judge McAuliffe (sitting by designation), concurring, stated the case against content neutrality of such a ban (Id. at 121):

> "In the world of modern music, "amplified" is not synonymous with "made louder." Electronic musical instruments can only produce sound through a process of electronic amplification, but those instruments are not inherently louder than acoustic or unamplified instruments. A modern synthesizer, for example, can make sound only by means of electronic amplification, yet that amplified instrument easily and faithfully mimics the sounds produced by a wide range of acoustic instruments such as pianos, harps, flutes, acoustic guitars,

---

[2] There was a conference the day before suit was filed in July 2004 but none since then. The court encouraged settlement in December but the City of Boston did not cooperate. See, e.g., Docket entries for 12/03/04 and 12/22/04. Plaintiffs have been and are willing to work it out.

> violins, drums, etc. Moreover, the synthesizer can reproduce those musical sounds as softly and quietly as desired. Yet, the synthesizer falls within the City's ban. An electronically amplified Aeolian Harp can produce the same "soft floating witchery of sound" as nature's own, but the volume is more easily controlled on the amplified version.
>
> So, while the City did not impose the amplification ban because of any overt disagreement with the messages conveyed by amplified musical instruments, thus, arguably, making the ban content neutral, I believe the ban is sufficiently over-reaching to give rise to what the Supreme Court referred to in *Ward v. Rock Against Racism*, 491 U.S. 781m 792, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), as an argument of "much force," i.e., that the City has impermissibly interfered with the artistic judgment of performers at A & O. In *Ward* the Court noted that "[a]ny governmental attempt to serve purely esthetic goals by imposing subjective standards of acceptable sound mix on performers would raise serious First Amendment concerns…" *id*. at 791, 109 S.Ct. 2746 (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)), notwithstanding the absence of official disagreement with the artistic messages conveyed by amplified instruments. (citation omitted)."

Judge Torruella, dissenting, would have narrowed the inquiry to "whether" the State's "articulated rationale actually supports the restrictions placed on particular conduct." Id. at 123 (quoting from New England Council of Carpenters v. Kinton, 284 F.3d 198, 212 (1st Cir. 2002)). The City of Boston motion denies the factual assertion of undue restraints on amplification. The City of Boston ignores the First Circuit's distinction between amplification and excessive noise. The plaintiffs claim here that the City is falsely accusing them of "excessive noise" by ignoring the decibel criterion, which results in a deprivation of the plaintiffs' rights to use amplified sound that is not excessive. But this cannot serve as a 12(b)(6) dismissal basis because the Amended Complaint pars. 29, 36, and 41-43 contain an objective standard of excessive noise (in excess of 70 dBs in daytime). Police officers ignore this standard to make peremptory bans on electronic amplification usage without measurement of volume or other effort to apply the ordinance correctly. The officers illegally confront street performers, and, on information and belief are doing so at direction of or through deliberate indifference of others of the defendants including the City of Boston itself.

Defendant City of Boston used a news article in footnote 1 of its memorandum to support its <u>fact</u> allegation of allowance of electronic amplification usage in Sam Adams Park by the City of Boston, an inappropriate reference in Rule 12(b)(6) papers (and unverified).  But, responding for completeness, without waiving objection to the procedural impropriety, Plaintiffs say: (1) this is at best a single instance set against contrary instances experienced by street artists before and after the incident reported in the article; (2) to further tell the story, the police cleared all performers away from the area shown in the article on a previous day (doing so, on information and belief on orders of the Mayor, or so a policeman said); and (3) to further tell the whole story, now that the City of Boston raises it, a few weeks later the City of Boston later cluttered the whole area with tables, umbrellas and chairs for the obvious purpose of excluding street performers, particularly break dancers.  To defeat the 12(b)(6) motion the plaintiffs need only show that these facts could conceivably be proved.

Park Rules, sections 1(b) and 6, are not yet repealed and have been used by rangers and police to ban amplification and other performance doing so where noise was not in violation of the noise ordinance.  Further, pretextual licensing schemes continue to be enforced by various of the public and private defendants, including the City of Boston, against street performers who perform with and without amplification.  Notwithstanding representations of the City of Boston:

> "that section 1(b) of the Rules of the Boston Parks and Recreation Commissioner prohibiting begging or canvassing for alms is unconstitutional and will not be enforced, and that section 6 of [those rules] does not apply to activities of plaintiffs."

(Docket entry of 12/23/2004),  Defendants have *de facto* applied these and other like ordinances and rules and *ad hoc* practices to harass plaintiffs and other street performers.  Again proof of these (which will be made) is not necessary at this stage.

**Count II**

Count II, at pars. 52-55 of the Amended Complaint incorporating pars. 1-48, alleges a scheme of delegating the regulation of public streets and the intersection known as Downtown Crossing to the private defendants. A street artist should not need to buy a shopping cart license from the Downtown Crossing Merchants' Association (at great expense if available at all) to demonstrate making of visual artwork or musical expression in a public space. Proof of these allegations will support a claim and relief as Count II requests.

In <u>Bery et al. v. City of New York et al</u>., 97 F.3d 689 (2d Cir. 1996) the court reversed a district court's denial of preliminary injunction against enforcement of a vendor regulatory ordinance against street visual artists. The Second Circuit Court of Appeals said (<u>Id</u>. at 695-96):

> "The City apparently looks upon visual art as mere "merchandise" lacking in communicating concepts and ideas… Such myopic vision not only overlooks case law central to the First Amendment jurisprudence but fundamentally misperceives the essence of visual communication and artistic expression…"

It is asserted in the Amended Complaint that the public and private defendants have restricted musical performance and visual art in the Downtown Crossing region. It is under color of law since police officers clear out artists and performers under threat of arrest and do so at the behest of private parties. In <u>Mastrovincinzo et al. v. New York City</u>, 313 F.Supp.2d 289 (S.D.N.Y. 2004) the court applied <u>Bery</u> and preliminarily enjoined enforcement of a street vendor regulation against street artists.

In <u>Citizens to End Animal Suffering and Exploitation Inc. et al. v. Fanueil Hall Marketplace</u>, 745 F. Supp. 65 (D. Mass. 1990), Judge Tauro held that the streets flanking the central market building at Quincy Market (and within confines of the North and South Market buildings) were public spaces notwithstanding leases to private parties (with a reserved easement for the public). Accordingly the court granted a preliminary injunction against

defendant's interference with protesters' anti-meat leafleting. Defendant had so interfered by having the protesters arrested by Boston Police. In Goldstein v. Town of Nantucket, 477 F.Supp. 606 (D.Mass. 1979) Judge Zobel said that letting local merchants dictate who could and could not perform near their establishments and citing the practice is irreconcilable with freedom of expression. The chilling of free expression in this case is no less egregious than the practices reviewed in those prior cases at the First Circuit and this Court.

There should be discovery, development in full and testing in a trial hearing of the symbiotic relationship of the private and public defendants concerning control of Downtown Crossing space. Count II should not be dismissed. Again, the City of Boston has resorted improperly to a fact affidavit to support a 12(b)(6) motion [its Exhibit B affidavit of Captain O'Rourke]. Without waiving the procedural impropriety or need for trial or processing under Rule 56, LR 56.1, Plaintiffs submit the declarations of Stephen H. Baird and Darrell Keighly, attached hereto as Exhibits A and B respectively, showing the truth of the matter.

**Counts III, IV**

Counts III and IV (pars 56-58, at 59-61, respectively, each incorporating pars. 1-48) attacks the admittedly unconstitutional but nevertheless unrepealed, unamended and still enforced park rules and other rules and ordinances applied selectively to harass street performers. Again, the City of Boston in its motion to dismiss (only for itself) denies the asserted reality of what is happening on the streets. Phantom licensing schemes are alleged to exist and performers are subjected to an endless run-around as indicated for past situations, pre this suit, at pars. 31-36 of the Amended Complaint and post filing of this suit and even post-repeal of Police Rules 75/403 at pars. 40-47. The points of fact and law discussed above in connection with Counts I

8

and II also apply to Counts III and IV.  As plaintiffs could conceivably prove facts to support a claim for relief, the motion should be denied.

### The Motion to Dismiss Errs in its Statement of the Record of the Case

The City's Memorandum refers to an alleged ruling of this Court re insufficiency that does not appear in the docket of this case.  There was lobby colloquy on two occasions about difficulty of framing an effective remedy and difficulties of proving the alleged civil rights violation, but no ruling.  That colloquy occurred in the context of a motion to dismiss for alleged mootness.  The City refers to pleading for a "third" time but there was only an original complaint, stipulated dismissal of City department and officers defendants after the City agreed to act for them and this Amended Complaint.  The City reverts to an allegation of mootness at the end of its memorandum, but that is a fact assertion left over from the not-repeated prior 12(c) motion of the City of Boston which was not the subject of any ruling, nor properly part of the present Rule 12(b)(6) motion.

### Conclusion

Each of Counts I-IV states a claim upon which relief can and should be granted.  The City of Boston Rule 12(b)(6) motion to dismiss should be denied.

### Request for Oral Hearing

An oral hearing on the motion is requested.

Respectfully submitted,

**COMMUNITY ARTS ADVOCATES, INC. and STEPHEN H. BAIRD, Plaintiffs**
By their attorneys,

/s/ Michael P. Twohig
Jerry Cohen, BBO #089400
Stephen Y. Chow, BBO #082990
Barbara Green Whitbeck, BBO #634343
Michael P. Twohig,  BBO #648079
PERKINS SMITH & COHEN LLP
One Beacon Street, 30th Floor
Boston, Massachusetts 02108
(617) 854-4000

November 8, 2005
31622-2oppmodismiss.doc

## CERTIFICATE OF SERVICE

I, Michael P. Twohig, hereby certify that a true copy of the foregoing was served upon the following counsel by the Court's electronic filing system and first-class mail, postage prepaid, on this the 8th day of November, 2005:

Thomas R. Donohue, Esq.
City of Boston Law Department
One City Hall
Boston, MA 02110

/s/ Michael P. Twohig
Michael P. Twohig