UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| COMMUNITY ARTS ADVOCATES, INC. ) | |
| and STEPHEN H. BAIRD, ) | |
|      Plaintiffs, ) | |
| ) | |
|    v. ) | C.A. No. 04-11618-NG |
| ) | |
| CITY OF BOSTON, et al., ) | |
|      Defendants. ) | |

GERTNER, D.J.:

MEMORANDUM & ORDER
February 17, 2006

I.    INTRODUCTION & BACKGROUND

Plaintiffs Community Arts Advocates and Stephen Baird sued to enjoin the City of Boston ("the City") from enforcing Boston Municipal Ordinance § 16-12.24 and Boston Police Department Rules 75 and 403.  Pursuant to 42 U.S.C. § 1983, plaintiffs challenged both policies as unconstitutional restrictions of their First Amendment rights under the United States Constitution and similar provisions of the Massachusetts state constitution.

The lawsuit served its purpose.  In December 2004, the City represented that the challenged police rule and city ordinance were in the process of being rescinded, and would not be enforced pending their repeal.

However, the plaintiffs persisted, seeking a preliminary injunction to keep the City from enforcing the very rule and ordinance it said it would repeal.  The plaintiffs' position was curious: They had won.  There was no present controversy, only plaintiffs' belief – then unsubstantiated – that the City would

not abide by the representations it made.  This Court, however, cannot deal in vague beliefs and speculation.  On December 23, 2004, I denied plaintiffs' motion, but agreed to keep the case open until the City formally repealed the challenged rule and ordinance.  In due course, both Rule 75 and § 16-12.24 were rescinded.

Plaintiffs continued to press their case, although its contours were now less than clear.  On September 12, 2005, the plaintiffs filed a Status Report and Renewed Request for Declaratory and Injunctive Relief, alleging that Boston police officers and park rangers were continuing to restrict street performers' public performances in violation of their First Amendment rights.

In effect, the plaintiffs' allegations had shifted from a facial challenge to a set of regulations to a case about the actual conduct of Boston police officers and park rangers.  Their argument was no longer, "defendants are enforcing unconstitutional *ordinances* that restrict our rights," but rather, "defendants are engaging in *practices* that restrict our rights."  A challenge to police officers' and park rangers' conduct may be legitimate, however, the plaintiffs here never amended their Complaint to that effect.

This is not just a technicality.  When a claim concerns the actions of individuals, rather than the constitutionality of a

rule or ordinance, fairness, not to mention the Federal Rules of
Civil Procedure, require that the defendants named be given some
notice.  The defendants are entitled to know to whom the
Complaint is directed, what laws are alleged to have been
violated, and the circumstances surrounding those violations.
Complaints brought pursuant to 42 U.S.C. § 1983 must also state
claims that are valid under that statute.  The plaintiffs plainly
cannot sue based on allegations tantamount to – "unnamed Boston
police officers, and unnamed park rangers are harassing me all
the time."

        In September 2005, I granted the plaintiffs leave to amend
their Complaint to address my concerns.  The plaintiffs have now
filed their Amended Complaint, and the defendants have moved to
dismiss.  Unfortunately, the plaintiffs still have not met the
relevant legal standard pursuant to 42 U.S.C. § 1983 in
fundamental ways.  In some claims, they *do* describe specific
incidents in which they claim their First Amendment rights were
violated, but they *do not allege which specific defendant was
responsible for each incident*.  In others, they *do* identify an
individual official in connection with an allegedly unlawful
incident, but *the individual they name, they do not sue*.  They
challenge the unlawful enforcement of certain Boston park rules,
*but they do not allege any specific incidents involving those
particular rules*.  Nor do they meet the legal requirements for

supervisory liability as against the Boston Police Commissioner
or the Commissioner of Boston Parks and Recreation, *whose actions
are not connected to any of the specific incidents described*.
Their allegations similarly fail to satisfy the requirements for
municipal liability.  Finally, though the plaintiffs have added a
number of private defendants whom they claim were working with
the police to deny them their rights, these parties have only
recently been served and have not yet filed an answer or other
response.

What follows in this decision is an effort to bring order to
the chaos of the Amended Complaint, to ascertain whether there is
even the core of an allegation that meets the applicable
standards.  I have found that core, as I describe below, in a
single claim against a single officer.  Accordingly, I **GRANT**
defendants' Motion to Dismiss in part, **DENY** it in part, and **DEFER**
a portion until the private defendants recently added to the
Amended Complaint respond.

## II.  ANALYSIS

The Amended Complaint states four grounds for relief.
First, the plaintiffs argue that police officers' and park
rangers' enforcement of Boston Municipal Ordinance § 16-26.1
banning "unreasonable or excessive noise" and setting decibel
limits for public performances amounts to a de facto ban on
amplification.  Second, the plaintiffs state that the City has

unconstitutionally delegated police power to private
organizations -- the Downtown Crossing Merchants Association and
the Boys & Girls Club -- which have been allowed to administer
vendor permitting schemes.  Third, the plaintiffs challenge Park
Rules 1 and 6, which prohibit begging or canvassing for alms or
engaging in a commercial enterprise on park land.  Fourth, the
plaintiffs claim that "other existing ordinances and rules"
violate street performers' First Amendment rights.

The plaintiffs have also added to the caption of their
Amended Complaint multiple new defendants: the Downtown Crossing
Merchants Association and its President, Anne Meyers; Boston
Police District A-1 Commander Bernard O'Rourke; Park Ranger
Reggie Sampson; "John Doe" Park Ranger #217; and "John Doe"
Boston Police Officer "Wayne."  The Amended Complaint names each
of the new individual defendants in both their official and
individual capacities.

A.  **Legal Standard: Motion to Dismiss**

When considering a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6), courts "must accept as true the well-
pleaded factual allegations of the Complaint, draw all reasonable
inferences therefrom in the plaintiff's favor, and determine
whether the complaint, so read, limns facts sufficient to justify
recovery on any cognizable theory." LaChapelle v. Berkshire Life
Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (internal citation

omitted).  A complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (internal citation omitted).

**B.    Legal Standard: 42 U.S.C. § 1983 Claims**

Under 42 U.S.C. § 1983, any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  The plaintiffs in this case have made allegations pursuant to 42 U.S.C. § 1983 against the City and its departments, the Downtown Crossing Merchants Association, and multiple individual defendants in both their official and individual capacities.

In order to state a claim against the City itself and its departments, the plaintiffs must allege that a City custom, policy statement, ordinance, regulation, or decision deprived them of their constitutional rights.  Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 690 (1978). Municipal liability cannot rest merely on a theory of respondeat superior:

> It is well-settled that municipalities may not be held responsible for the constitutional violations of their employees in a § 1983 suit . . . Rather, 'it is when

-6-

> execution of a government's policy or custom
> . . . by those whose edicts or acts may
> fairly be said to represent official policy,
> inflicts the injury that the government as an
> entity is responsible under § 1983.'

Baron v. Suffolk Cty. Sheriff's Dept., 402 F.3d 225, 236 (1st Cir. 2005).

This same test applies to claims against the individual defendants in their *official* capacities.  The Amended Complaint must allege that the police officer and park ranger defendants infringed on the plaintiffs' First Amendment rights pursuant to a City custom, policy statement, ordinance, regulation, or decision.  Monell, 436 U.S. at 690.

In order to state a claim against the defendants in their *individual* capacities, however, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

To the extent that the plaintiffs have sued defendants in their individual or official capacities who are supervisors, they cannot rely on those defendants' positions alone to establish § 1983 liability.  Again, as noted above, there is no *respondeat superior* in § 1983.  The plaintiffs must instead show that each supervisor directly participated in, condoned, or tacitly authorized unconstitutional conduct.  Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).

Finally, to state a claim against the private actors sued in the Amended Complaint -- the Downtown Crossing Merchants Association and its President, Anne Meyers -- the plaintiffs must allege that the private actor "has so far insinuated itself into a position of interdependence with [a government actor] that it must be recognized as a joint participant in the challenged activity." <u>Burke v. Town of Walpole</u>, 405 F.3d 66, 88 (1st Cir. 2005).

In short, the allegations against the various defendants sued in the Amended Complaint must take one or more of the forms explained above and meet the required standards for each: claims of municipal liability; claims against official defendants in their official capacities; claims against official defendants in their individual capacities; or claims against private defendants who have become joint participants with the government in unconstitutional activity.

C.    <u>**Count I: Ban on Amplification**</u>

The plaintiffs argue first that Boston police officers and park rangers have implemented a de facto ban on amplified street performances, using their power under Boston Municipal Ordinance § 16-26.1 to control noise levels.  To support their allegations, the plaintiffs cite four amplifier-related incidents:

> 1.    *On or about June 24, 2005, Bobby Bishop was told by a park ranger [name not given] in Boston Common

that he could not perform using amplification, but
that he could continue if he "kept it low."[1]

2.   *On or about July 10, 2005, Lisa Housman and David
     Falk, while performing in Boston Common, were
     approached by a park ranger [name not given] who
     asked for their amplifier permit.  The ranger
     allowed them to finish the day, but told them not
     to return without a permit.  They later went to
     the Parks Department, and were told [name not
     given] that no such permit existed.  They went
     online to look for a permit, and found only an
     application for a one-time entertainment license.

3.   On or about July 20, 2005, performer Darrell
     Keighley, while performing on the streets of
     Boston [location not given], was approached by a
     uniformed police officer [name not given] who told
     him he could not play an amplified instrument.

4.   ~On October 21, 2005, Boston Police Officer
     Rivers, #1537, stopped Darrell Keighley from
     playing [location not given] because he did not
     have an amplifier permit.[2]

The plaintiffs make allegations here against two unnamed

park rangers, one unnamed police officer, and one specific

officer, Boston Police Officer Rivers.  Though three of the

plaintiffs' four amplification incidents do not identify any

---

[1] At a status conference held on September 15, 2005 to address the
plaintiffs' Status Report and Renewed Request for Declaratory and Injunctive
Relief, I determined that the examples of ongoing harassment the plaintiffs
presented were too vague to support a § 1983 claim.  The plaintiffs continue
to rely on many of those same examples in their Amended Complaint, without
providing additional detail.  I note those examples in this Memorandum & Order
with an asterisk (*).

[2] The plaintiffs did not include this allegation in the Amended
Complaint.  Instead, the description of this incident appears in one of the
Declarations attached to the plaintiffs' Opposition to the defendants' Motion
to Dismiss.  Normally, a court may not consider documents outside the
Complaint in evaluating a motion to dismiss.  Diva's Inc. v. City of Bangor,
411 F.3d 30, 38 (1st Cir. 2005).  However, I have included the allegations
from the plaintiffs' Opposition, marked with a (~) symbol in this decision,
to illustrate that the bulk of the plaintiffs' claims would not survive even if
these incidents had been included in the Amended Complaint itself.

particular police officer or park ranger, that is not fatal in civil rights cases at the outset.  In such cases, the names of the officers can be pleaded by denominating the unknowns as "John Doe" or "Richard Roe" so long as the plaintiff takes timely steps to discover their real identity.  <u>Roper v. Grayson</u>, 81 F. 3d 124, 126 (10th Cir. 1996).

The more serious problem is that the alleged misconduct described is not attributed to *any* of the defendants, named or unnamed.  The one named officer, Officer Rivers, is not identified as a defendant in the Amended Complaint in either his official or individual capacity.  In addition, though the Amended Complaint refers to two anonymous defendants, it does not appear that either -- Park Ranger #217 or Boston Police Officer "Wayne" -- had a role in any of the four amplification incidents.  Though plaintiffs have made four allegations of officers' and rangers' interfering with the plaintiffs' amplified performances, the plaintiffs have not sued any of the officials allegedly at fault.  Thus, plaintiffs have not adequately alleged § 1983 individual or official liability on the basis of any of these incidents.

Nor is there any basis for supervisory liability against Police Commissioner Kathleen O'Toole or Parks and Recreation Commissioner Antonia Pollack with respect to the amplification claim.  The only allegation even remotely directed to these individuals is a single one, against Pollack, alleging that she

"is responsible for all actions taken by the Boston Park Rangers." However, it is clear that, without more, § 1983 supervisory liability cannot be premised on respondeat superior. <u>Whitfield</u>, 431 F.3d at 14.

Even if there were sufficient information to identify the unknown officers and rangers implicated in these incidents, and even if the plaintiffs had properly sued those officers and rangers, the Amended Complaint would also fail to state a claim of § 1983 municipal liability. The plaintiffs have made no allegation that the police officers and rangers in these four incidents were acting pursuant to an explicit City policy. The incidents do not even suggest an official, albeit implicit, custom on which § 1983 municipal liability may be premised. The four incidents fail to rise to the level of "a custom [that] is so well settled and wide spread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." <u>Baron</u>, 402 F.3d at 237.[3]

The plaintiffs' first claim concerning amplification therefore cannot stand.

------

[3] Indeed, given the fact that the Parks Department denied knowledge of the amplification permit requested by Ms. Housman and Mr. Falk, as well as the City's repeal of other challenged rules and ordinances, there is every reason to believe the opposite – that the defendants are trying to abide with their obligations under the First Amendment.

D.    **Count II: Delegation of Police Power**

The plaintiffs' second claim concerns the delegation of police power by the City to the Downtown Crossing Merchants Association and the Boys & Girls Club.  In their Amended Complaint and Opposition to Defendant's Motion to Dismiss, the plaintiffs describe four incidents in which performers in the Downtown Crossing area have been instructed to purchase or have purchased vendor permits, though such permits are apparently meant for vendor carts rather than street performers.

1.    *On or about June 25, 2005, defendant police officer [or park ranger] Reggie Sampson told artist Jeff Kesses [location not given] that he needed a vendor permit in order to draw publicly. On the same day, he was also told by a security guard [name not given] in front of City Hall that he needed a permit.  Mr. Kesses went to the Parks Department and was ultimately referred to Jack Hurley at the Boys & Girls Club for a permit.

2.    *On or about September 1, 2005, Darrell Keighley was approached at Downtown Crossing by two uniformed police officers [names not given] and told he needed to go to City Hall to get a permit. They told him that precinct captain O'Rourke had ordered officers to shut down all performers without permits.  Mr. Keighley went to the precinct headquarters and to City Hall, and was told [name not given] there that he needed a permit from the Downtown Crossing Merchants Association.

3.    *~On or about September 1, 2005, hip hop dancer Cyrus Brooks was told [name not given] that he needed a permit in order to perform in Downtown Crossing.

4.    ~A Peruvian group, Inca Son, purchased a Downtown Crossing vendor cart permit in order to perform there. [No further details given.]

-12-

In its Motion to Dismiss, the City defendant merely denies
that it has delegated police power to the Downtown Crossing
Merchants Association and/or the Boys & Girls Club.  The City
also states that the permits allegedly required and/or issued by
these organizations are in fact issued by the Boston Public Works
Department, not the City or Police Department.  Finally, the City
provides an affidavit from Commander O'Rourke stating that he
never ordered officers to shut down street performers.

Leaving aside the defendants' fact-based denials --
inappropriate in the context of a motion to dismiss -- I note
that the plaintiffs have only recently served the new defendants
sued in the Amended Complaint, including the private defendants
targeted in this claim.  I will defer consideration of the
allegations against the Downtown Crossing Merchants Association
and its President until after these new defendants respond to the
Amended Complaint.

Of the remaining allegations, those against the Boys & Girls
Club and regarding Inca Son are seriously flawed.  First, though
the plaintiffs have made allegations against the Boys & Girls
Club in the Amended Complaint, they have not sued or served the
organization.  Thus, to the extent the plaintiffs are attempting
to make claims against the Club, those claims cannot stand.
Second, the plaintiffs provide no information at all with regard
to Inca Son, except to state that the group purchased a vendor

-13-

permit.  The plaintiffs do not allege that any public or private
official required the group to purchase a permit, and do not link
their allegations to any defendant named in the Amended
Complaint.  Whatever allegation the plaintiffs are attempting to
make regarding Inca Son must fail as well.

Finally, with regard to the allegations against Reggie
Sampson,[4] the Amended Complaint's caption names Mr. Sampson in
his individual and official capacities, but the Amended Complaint
provides no basis for the latter.  The allegations concerning Mr.
Sampson contain no link to a City custom, policy statement,
ordinance, regulation or decision, as required by § 1983.
Moreover, § 1983 municipal liability cannot be established on the
basis of only the single incident involving Mr. Sampson.  <u>Fabiano
v. Hopkins</u>, 352 F.3d 447, 452 (1st Cir. 2003) (absent some other
evidence of an unconstitutional policy or custom, "a single
incident of misconduct cannot provide the basis for municipal
liability under § 1983").

I will – for the moment – allow the remaining claim against
Mr. Sampson in his individual capacity to proceed.  I dismiss all
other claims, and allegations purporting to be claims, in this
category except for those against the Downtown Crossing Merchants

---

[4] The plaintiffs refer to Mr. Sampson as a park ranger in the caption of
their Amended Complaint and as a police officer in the body of the document.

Association and its President.  Evaluation of those claims will await service of their responsive pleadings.

### E.  Count III: Park Rules 1 and 6

Plaintiffs argue next that, though the defendant Parks Department "stated in open court" that Park Rules 1 and 6 would not be enforced, those Rules are still on the books and are being enforced against street performers.  The defendants assert that these Rules have been determined to be unconstitutional, and are therefore unenforceable and unenforced.

Defendants' assertions aside, this claim by plaintiffs fails, as they have not provided any instance of the continued enforcement of these rules.  Every example of park rangers' alleged harassment of street performers concerns amplification, not Park Rules 1 and 6, and the plaintiffs have not cited any instance of a park official's use of these particular rules to limit performance in the parks.  This count, whether it is read as asserting a claim of individual, official, or municipal § 1983 liability, therefore falls short.

### F.  Count IV: Other Existing Ordinances and Rules

The plaintiffs' final claim is a catch-all, or more appropriately described, a hodge-podge: They argue that Boston police officers and park rangers are enforcing both unrepealed and repealed ordinances and rules in a way that violates the First Amendment rights of street performers.  The plaintiffs

-15-

provide six examples that might be read as supporting this

allegation:[5]

1.    *On or about April 2, 2005, a police officer [no
      name given] told Jason Gardner that he *could*
      perform in Sam Adams Park in Faneuil Hall, but a
      Faneuil Hall employee "essentially blocked all
      access" to the park. [No other details given.]

2.    ~On October 8, 2005, a Boston police officer [no
      name given] stopped Larry Bell from making balloon
      animals on the sidewalk outside TD Banknorth
      Garden, saying the sidewalk was private property.

3.    ~On October 8, 2005, security guards and MBTA
      police [no names given] stopped George Markee from
      playing acoustic guitar outside TD Banknorth
      Garden.

4.    ~Bucket drummer Jermaine Carter has been harassed
      by Boston police officers.  [No details given.]

5.    ~Circus Sardine fears performing in Boston due to
      police harassment. [No details given.]

6.    ~Street performers from Cambridge fear performing
      in Boston due to police harassment. [No details
      given.]

Defendants argue that none of these allegations is specific

enough, and that plaintiffs cannot bring claims based on the

future possibility that performers will be harassed.

Here again, the plaintiffs have failed not only to identify

a single officer, but also to provide details tying any of the

-----

[5] The plaintiffs also refer to four additional incidents in their
Amended Complaint: June 19 and July 18, 2004 incidents involving Stephen
Baird; a June 2003 incident involving Larry Meyerhoff; and an August 2003
incident involving Rosanna Lee Cohen.  These same incidents were listed in the
initial Complaint, and are challenges to the enforcement of the City ordinance
and Boston Police Department rules before they were repealed.  Because these
four allegations date from and relate to an earlier phase of this litigation,
I do not consider them in this decision.

named defendants (including the anonymous ones) to these
allegations.  They have also failed to make any colorable
argument for supervisory or municipal liability.  In addition,
the plaintiffs' allegations regarding Circus Sardine and
Cambridge street performers are entirely hypothetical.  Finally,
any First Amendment allegations against an anonymous Faneuil Hall
employee would fail on these facts, as such an employee would
likely not be a state actor and there are no allegation that his
acts were entangled with that of the police; indeed, the Amended
Complaint suggests the opposite.

    For these reasons, the plaintiffs' final count fails to
state a claim of § 1983 liability in any form upon which relief
can be granted.

**III. <u>CONCLUSION</u>**

    Plaintiffs' Amended Complaint reads like a grab bag of claims
and allegations, without any effort to meet the legal standards
of § 1983.

    It is not up to the Court to organize this case into a set
of coherent and cognizable claims; it is up to counsel.  Where
they have not done so, the Amended Complaint must fail.

    Accordingly, for the reasons stated above, I find that the
plaintiffs have failed to state claims in their Amended Complaint
upon which relief can be granted, with the sole exception of the
claims against Mr. Sampson in his individual capacity.  With

respect to the claims against the Downtown Crossing Merchants Association and its President, Anne Meyers, I will defer consideration until those parties have responded.

I therefore **GRANT** defendants' Motion to Dismiss (document # 50) in part, **DENY** it in part, and **DEFER** a portion until the private defendants respond.

One final note: These dismissals should not be read as evincing a lack of concern about street performers' First Amendment rights. I encourage the Boston Police and Parks Departments to continue to educate their officers and rangers about the changes in policy concerning street performance. I also urge the Downtown Crossing Merchants Association to continue its talks with the plaintiffs and to come to an agreement over the issue of permits in the Downtown Crossing area. What I will not do, however, is read the Amended Complaint, prepared not by a pro se litigant but by counsel, so generously as to "rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).

**SO ORDERED.**

**Dated: February 17, 2006**          s/NANCY GERTNER U.S.D.J.